UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LYNN STARKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-03153-RLY-TAB |
| | ) | |
| ROMAN CATHOLIC ARCHDIOCESE OF | ) | |
| INDIANAPOLIS, INC., | ) | |
| RONCALLI HIGH SCHOOL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTION TO BIFURCATE**

**I.   Introduction**

Defendants are resisting efforts by Plaintiff Lynn Starkey to discover facts she contends are vital to proving her claims. Earlier in this case, Defendants filed a motion to stay the proceedings pending an anticipated and potentially controlling U.S. Supreme Court case. [Filing No. 12.] This Court thwarted that attempt with a marginal entry. [Filing No. 21.] Defendants have now taken a different approach. This time around, Defendants have filed a motion to bifurcate discovery [Filing No. 25] seeking to limit initial discovery to the issue of the applicability of what is termed the "ministerial exception" that provides First Amendment safeguards to religious groups. Defendants' motion to bifurcate raises a significantly closer question than did their motion to stay proceedings. In the end, however, the result is the same: discovery shall procced unbridled by bifurcation.

**II.   Discussion**

In *Hosanna-Tabor Evangelical Lutheran Church & Sch. V. E.E.O.C.,* 565 U.S. 171 (2012), the Supreme Court unanimously recognized the "ministerial exception"—a First

Amendment doctrine that bars certain employment disputes between a religious organization and its "ministers." This doctrine protects "religious groups in choosing who will preach their beliefs, teach their faith, and carry out their mission"—including within religious schools. *Id.* at 194-96. Defendants terminated Starkey, a homosexual female, from her position as Co-Director of Guidance at Roncalli High School after learning Starkey was in a same-sex union. In the pending motion to bifurcate, Defendants assert that the Court must first address the applicability of the ministerial exception, and that the remainder of this case should be bifurcated unless and until the Court deems this exception inapplicable.

Defendants cite numerous cases in support of their argument that bifurcation is standard practice in ministerial exception cases and that the exception is a threshold matter that must be decided before merits-based discovery. *Kirby v. Lexington Theological Seminary,* 426 S.W.3d 597, 608-09 (Ky. 2014); *Sterlinski v. Catholic Bishop of Chicago,* No. 16-C-00596, 2017 WL 1550186, at *5 (N.D. Ill. May 1, 2017); *Herzog v. St. Peter Lutheran Church,* 884 F. Supp. 2d 668, 671 (N.D. Ill. 2012); *Grussgott v. Milwaukee Jewish Day Sch. Inc.,* 260 F. Supp. 3d 1052, 1053 (E.D. Wis. 2017); *Collett v. Archdiocese of Chicago,* 200 F. Supp. 3d. 730, 735 (N.D. Ill. 2016); *Lishu Yin v. Columbia Int'l Univ.*, No. 3:15-CV-03656-JMC, 2017 WL 4296428, at *4 (D.S.C. Sept. 28, 2017); *Miller v. Intervarsity Christian Fellowship/USA,* No. 09-CV-680 SLC, 2010 WL 2803123, *2 (W.D. Wis. July 14, 2010); *Stabler v. Congregation Emanu-El of the City of New York,* No. 16 CIV.9601 (RWS), 2017 WL 3268201, at *7 (S.D.N.Y. July 28, 2017); *Fassl v. Our Lady of Perpetual Help Roman Catholic Church,* No. CIV.A. 05-CV-0404, 2005 WL 2455253, at *1 (E.D. Pa. Oct. 5, 2005); *Demkovich v. St. Andrew the Apostle Parish,* 343 F. Supp. 3d 772, 786-87 (N.D.Ill. 2018). And as Defendants correctly note, Starkey offers scant case law in response to these authorities.

However, none of these decisions is binding on this Court. Moreover, a closer look at the foregoing cases reveals they are not as formidable on individual inspection as they may appear at first blush to be collectively. For example, *Kirby's* relevant holding is based on Kentucky law. *Kirby,* 426 S.W.3d 597 at 608-09. In *Sterlinski,* No. 16-C-00596, 2017 WL 1550186, at *5, it is not clear that the parties even requested bifurcation, and the discovery the court authorized included expert witness discovery. In *Herzog,* 884 F, Supp. 2d at 671, the court limited discovery, but this discovery included written discovery, affidavits, and multiple depositions. In *Grussgott,* 260 F. Supp. 3d at 1053, the parties agreed to limit discovery, so that case has no applicable legal holding. Likewise, in *Collett,* 200 F. Supp. 3d. at 735, the court denied a motion to dismiss that raised the ministerial exception and set a status conference to address limited discovery and dispositive motions. In *Lishu,*, No. 3:15-CV-03656-JMC, 2017 WL 4296428, at *4-6, and *Miller,* No. 09-CV-680 SLC, 2010 WL 2803123, at *2, the courts simply ordered limited discovery without any discussion whatsoever of bifurcation. In *Stabler,* No. 16 CIV.9601 (RWS), 2017 WL 3268201, at *7, the court ordered the parties to meet and confer regarding the scope of discovery. In *Fassl,* No. CIV.A. 05-CV-0404, 2005 WL 2455253, at *1, the court limited discovery, but the court also noted that apparently neither side conducted any discovery. Finally, in *Demkovich,* 343 F. Supp. 3d at 786-87, bifurcation or limited discovery was not even at issue. The *Demkovich* court had previously found plaintiff to be a minister for purposes of the ministerial exception, and instead the issue was whether the exception could be extended to hostile work environment claims. *Id*. at 778. Thus, while the foregoing cases support Defendants' argument for limited discovery, they are far from conclusive on the bifurcation issue.

Rather than addressing these cases head on, Starkey directs her arguments against bifurcation elsewhere. For example, Starkey argues that even if the ministerial exception applied, it would not bar all of her claims, noting that the Seventh Circuit has not decided whether the ministerial exception bars Title IX claims. [Filing No. 34, at ECF p. 5.] Starkey also contends that evidence of pretext related to the ministerial exception will be "intertwined" with general discovery. [Filing No. 34, at ECF p. 8.] And perhaps most interesting, Starkey submits as an exhibit an email chain to support the contention that "Defendants even admitted in 2016 that school counselors are not covered by the ministerial exemption." [Filing No. 34, at ECF p. 5; Filing No. 34-1, at ECF Ex. A.] Defendants do their best to counter each of these arguments. They point out, for instance, that other courts have held that the ministerial exception bars Title IX claims. *See Petruska v. Gannon University,* No. 1:04-cv-80, 2008 WL 2789260, at *4 (W.D. Pa. Mar. 31, 2008.) And Defendants take issue with Starkey's reliance on the email chain, contending that Starkey cites this out of context and that a careful reading of the emails reflects that the Archdiocese viewed Starkey as a minister. Perhaps so, but the email string undeniably states that, according to legal counsel, school counselors "do not meet the definition for the ministerial exemption." [Filing No.34-1 at ECF p. 3.] Thus, Starkey's arguments against bifurcation carry some weight.

Ultimately, however, the Court is struck by what appear to be significant and material disputes in the facts underlying Starkey's duties with the Archdiocese. As a consequence of these disputes, the applicability of the ministerial exception is very much up in the air at this juncture. The materiality of these disputes is best illustrated by the parties' respective descriptions of Starkey's job duties, which the Court sets forth verbatim below.

Defendants describe Starkey's duties as follows:

> Plaintiff Lynn Starkey worked for Defendants for over thirty-nine years in various capacities, including as a religion teacher, music teacher, drama teacher, choral director, guidance counselor, and Co-Director of the Guidance Department. Each year, she was employed pursuant to a one-year employment contract that expired at the end of the school year. In the latest school year, Ms. Starkey was employed as Co-Director of Guidance at Roncalli. Compl. ¶ 13; Answer ¶ 13. She was also a member of the school's Administrative Council, which was a position of leadership within the school.
>
> As Co-Director of Guidance, Ms. Starkey was designated in her written employment contact as a "a minister of the faith." Ministry Description - School Guidance Counselor ¶ II, attached as Exhibit 1; *see* 2018-2019 School Guidance Counselor Ministry Contract - Roncalli High School ¶ 4, attached as Exhibit 2 (incorporating the Ministry Description document into the contract). The very first "Role" identified in the description of her ministry was to "Facilitat[e] Faith Formation" in her students the following ways:
>
> 1. Communicat[ing] the Catholic faith to students and families through implementation of the school's guidance curriculum…[and] offering direct support to individual students and families in efforts to foster the integration of faith, culture, and life.
> 2. Pray[ing] with and for students, families, and colleagues and their intentions.
> 3. Plan[ning] and celebrat[ing] liturgies and prayer services as appropriate. Teach[ing] and celebrat[ing] Catholic traditions and all observances in the Liturgical Year.
> 4. Model[ing] the example of Jesus, the Master Teacher, in what He taught, how He lived, and how He treated others.
> 5. Convey[ing] the Church's message and carr[ying] out its mission by modeling a Christ-centered life.
> 6. Participat[ing] in religious instruction and Catholic formation, including Christian services, offered at the school….

[Filng No. 27, at ECF p. 3.]

In contrast, Starkey describes her duties as follows:

> Starkey worked for Roncalli for her entire adult life – thirty-nine years of employment. Starkey is a former Co-Director of Guidance at Roncalli, a private Catholic high school operated under the direction of the Archdiocese. Dkt. 1, ¶ 13. Starkey worked as a guidance counselor from 1998 until 2007, and as a Co-Director of Guidance from 2007 until 2019. Dkt. 20, ¶ 14.

> As Co-Director of Guidance, Starkey provided academic and post-secondary (college/career) guidance counseling services to high school students, and performed various administrative services. Dkt. 1, ¶ 15. Her job duties and responsibilities did not include any religious duties. Dkt. 1, ¶ 16. She has never held a title with the Catholic Church, or held herself out as a minister. Dkt. 1, ¶ 17. She did not perform any religious functions for the Catholic Church. Dkt. 1, ¶ 18. Starkey's role as guidance counselor did not include leading prayer or other religious services, nor did it include integrating religious teachings into her interactions with students. Dkt. 1, ¶ 21. In May 2016, the Archdiocese's Human Resources department confirmed to Roncalli's Principal, Chuck Weisenbach, via email, that the Archdiocese's lawyers had confirmed that "school counselors and social workers do not meet the definition for the ministerial exemption."

[Filing No. 34, at ECF p.2.]

Whether Starkey's role can be considered ministerial is subject to a fact-intensive analysis, and such questions are usually are left for a jury. *Grussgott v. Milwaukee Jewish Day School*, 882 F.3d 655, 657 (7th Cir. 2018). Moreover, the ministerial exception is an affirmative defense upon which Defendants carry the burden of proof. *Lishu Yin v. Columbia Int'l Univ.*, No. 3:15-CV-03656-JMC, 2017 WL 4296428, at *3 (D.S.C. Sept. 28, 2017) (denying motion to reconsider order denying motion to dismiss based upon the ministerial exception); *Garrick v. Moody Bible Institute*, No. 18 C 0573, 2019 WL 4674570, at *8 (N.D. Ill. Sept. 25, 2019) (ministerial exception is an affirmative defense).

Starkey's job duties, as set forth above, are so vastly different it is hard to conclude at this juncture that the applicability of the ministerial exception can be resolved at the summary judgment stage. Of course, that is an issue to be addressed when dispositive motions are fully briefed with the benefit of adequate discovery. But it is useful to take an advance peek at this issue in addressing the bifurcation issue at hand. The more obvious it is that the ministerial exception were to apply, the more compelling the case would be for bifurcation. In other words, why allow unbridled discovery if it appears likely that the case may resolved or significantly narrowed by way of the ministerial exception?

On the other hand, if the ministerial exception is hotly contested and the outcome rests upon disputed facts, bifurcation is unwise. To permit bifurcation in such a scenario would result in unnecessary delay and multiple dispositive motions, which this Court disfavors. *See* Uniform Case Management Plan for Civil Cases (revised 9/7/18), p. 6-7, *available at* https://www.insd.uscourts.gov/sites/insd/files/Uniform%20CMP%20-%20Final%209-7-18.pdf (last visited December 18, 2019). Were the Court to permit bifurcation, it likely would take at least nine months to complete discovery, brief the ministerial exception on summary judgment, and issue a ruling. Assuming factual disputes would result in the issue being presented to the jury, which is the usual procedure, *Grussgott*, 882 F.3d at 657 (7th Cir. 2018), this case would be needlessly delayed. The Court also contemplates that bifurcation could result in a flurry of potentially expensive and thorny discovery disputes given the likelihood that the parties disagreed about the scope of discovery as it relates to the ministerial exception.

Of course, if the ministerial exception is amenable to resolution at the summary judgment stage, then bifurcation would be a quicker and less expensive way to resolve the issue. Ultimately, whether to order bifurcation is a close call and one that is committed to the Court's discretion, which has the inherent power to control its docket. *Eli Lilly and Co. v. Valeant Pharmaceuticals Intern.*, No. 1:08-cv-1720-SEB-TAB, 2009 WL 4745664 (S.D. Ind. Dec. 4, 2009). District courts have an important and inherent authority and obligation to control their calendars and ensure that litigation proceeds expeditiously. *Barker v. Kapsch Trafficcom USA*, No. 1:19-cv-0987-TWP-MJD, 2019 WL 2524247, at *2 (S.D. Ind. June 18, 2019). In the case at bar, this litigation will proceed most expeditiously not by throwing up the barrier of bifurcation, but rather by moving forward with full discovery. For these reasons, Defendants' motion to bifurcate is denied.

**III.     Conclusion**

While an admittedly close question, this Court exercises its discretion by denying Defendants' motion to bifurcate discovery. [Filing No. 25.] Defendants shall respond to Starkey's outstanding discovery requests within 14 days of this order.

IT IS SO ORDERED.

Date:   12/20/2019

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

All ECF-registered counsel of record via email.