# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LYNN STARKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-03153-RLY-TAB |
| | ) | |
| RONCALLI HIGH SCHOOL, INC., | ) | |
| and ROMAN CATHOLIC | ) | |
| ARCHDIOCESE OF | ) | |
| INDIANAPOLIS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ..................................................................................................... 1

ARGUMENT .............................................................................................................. 1

    I.  Starkey's federal claims are barred under Title VII and Title IX. ..................... 1

      A. Title VII does not apply to decisions by religious employers
          based on an employee's religious observances and practices....................... 1

      B. Starkey's breach was a nondiscriminatory reason
          for nonrenewal ............................................................................................... 5

      C. Starkey has failed to allege that the challenged decision was
          motivated by sexual orientation, rather than Church teachings ............... 6

      D. Starkey's Title IX claim is preempted by Title VII ..................................... 7

      E. Starkey's Title IX claim is barred by the
          religious exemption....................................................................................... 8

      F. Neither Title VII nor Title IX applies to claims of
          discrimination based on sexual orientation................................................ 9

    II.  All of Starkey's claims are barred by the First Amendment ............................ 9

      A. Starkey's claims are barred by religious autonomy................................... 10

          1. Starkey's federal claims are barred by religious autonomy................. 10

          2. Starkey's state claims are barred by religious autonomy.................... 13

      B. Starkey's claims are barred because they would
          impermissibly entangle the Court in religious questions ......................... 14

      C. Starkey's claims are barred by freedom of association .............................. 17

      D. Constitutional avoidance requires dismissal of Starkey's
          claims ............................................................................................................ 20

CONCLUSION.......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alicea-Hernandez v. Catholic Bishop of Chi.*,
    320 F.3d 698 (7th Cir. 2003) .................................................................. 10

*Boy Scouts of Am. v. Dale*,
    530 U.S. 640 (2000) ...................................................................... 17, 18, 19

*Boyd v. Harding Acad. of Memphis, Inc.*,
    88 F.3d 410 (6th Cir. 1996) ............................................................... 4, 16

*Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*,
    796 N.E.2d 286 (Ind. 2003) ............................................................. 13, 14

*Brown v. Ill. Dep't of Human Res.*,
    717 F. App'x 623 (7th Cir. 2018) ............................................................ 7

*Bryce v. Episcopal Church in the Diocese of Colo.*,
    289 F.3d 648 (10th Cir. 2002) ....................................................... 10, 11, 12, 13

*Burton v. Bd. of Regents of the Univ. of Wis. Sys.*,
    171 F. Supp. 3d 830 (W.D. Wis. 2016) ..................................................... 7

*Burton v. Bd. of Regents of the Univ. of Wis. Sys.*,
    851 F.3d 690 (7th Cir. 2017) ................................................................... 7

*Christian Legal Soc'y v. Martinez*,
    561 U.S. 661 (2010) ......................................................................... 6, 7

*Christian Legal Soc'y v. Walker*,
    453 F.3d 853 (7th Cir. 2006) .......................................................... 6, 7, 19

*Cline v. Catholic Diocese of Toledo*,
    206 F. 3d 651 (6th Cir. 2000) ...................................................... 6, 7, 16

*Coco v. Elmwood Care, Inc.*,
    128 F.3d 1177 (7th Cir. 1997) ................................................................ 5

*Corp. of the Presiding Bishop of the Church of Jesus Christ of
    Latter-day Saints v. Amos*,
    483 U.S. 327 (1987) ............................................................................ 12

*Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*,
    450 F.3d 130 (3d Cir. 2006).........................................................*passim*

*Demkovich v. St. Andrew the Apostle Parish,*
    343 F. Supp. 3d 772 (N.D. Ill. 2018) .................................................. 10, 11, 12, 13

*Dias v. Archdiocese of Cincinnati,*
    No. 1:11-cv-00251, 2013 WL 360355 (S.D. Ohio Jan. 30, 2013) .......................... 13

*EEOC v. Miss. Coll.,*
    626 F.2d 477 (5th Cir. 1980) .................................................................................. 3

*EEOC v. Pac. Press Publ'g Ass'n,*
    676 F.2d 1272 (9th Cir. 1982) ................................................................................ 4

*Emp't Div. v. Smith,*
    494 U.S. 872 (1990) ............................................................................................. 15

*Fitzgerald v. Barnstable Sch. Comm.*
    555 U.S. 246 (2009) ............................................................................................... 7

*Ganzy v. Allen Christian Sch.,*
    995 F. Supp. 340 (E.D.N.Y. 1998) ...................................................................... 16

*Garrick v. Moody Bible Inst.,*
    412 F. Supp. 3d 859 (N.D. Ill. 2019) ............................................................*passim*

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418 (2006) ............................................................................................. 19

*Goodman v. Archbishop Curley High Sch., Inc.,*
    149 F. Supp. 3d 577 (D. Md. 2016) ....................................................................... 9

*Grayson v. Schuler,*
    666 F.3d 450 (7th Cir. 2012) ............................................................................... 17

*Grussgott v. Milwaukee Jewish Day Sch., Inc.,*
    882 F.3d 655 (7th Cir. 2018) ............................................................................... 16

*Hall v. Baptist Mem'l Health Care Corp.,*
    215 F.3d 618 (6th Cir. 2000) ............................................................................... 17

*Herx v. Diocese of Fort Wayne-South Bend, Inc.,*
    772 F.3d 1085 (7th Cir. 2014) ........................................................................ 4, 16

*Herx v. Diocese of Ft. Wayne-South Bend, Inc.,*
    48 F. Supp. 3d 1168 (N.D. Ind. 2014) ...................................................... 4, 6, 7, 16

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984) .............................................................................................. 18

*Hively v. Ivy Tech Cmty. Coll. of Ind.,*
  853 F.3d 339 (7th Cir. 2017) ................................................................. 11

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
  565 U.S. 171 (2012) ...................................................................... 11, 19

*Hung Nguyen v. Regents of Univ. of Cal.,*
  No. 8:17-CV-00423-JVS-KES, 2018 WL 5886018
  (C.D. Cal. Sept. 17, 2018) .................................................................... 8

*Jackson v. Birmingham Bd. of Educ.,*
  544 U.S. 167 (2005) .............................................................................. 7

*Kennedy v. St. Joseph's Ministries, Inc.,*
  657 F.3d 189 (4th Cir. 2011) ............................................................. 2, 4

*Korte v. Sebelius,*
  735 F.3d 654 (7th Cir. 2013) ......................................................... 10, 11

*Lawrence v. Texas,*
  539 U.S. 558 (2003) ........................................................................... 6-7

*Lemon v. Kurtzman,*
  403 U.S. 602 (1971) ........................................................................... 10

*Little v. Weurl,*
  929 F.2d 944 (3d Cir. 1991)............................................................. 4, 19

*Ludlow v. Nw. Univ.,*
  125 F. Supp. 3d 783 (N.D. Ill. 2015) .................................................... 8

*Maguire v. Marquette Univ.,*
  627 F. Supp. 1499 (E.D. Wis. 1986) ................................................. 3, 4

*McCarthy v. Fuller,*
  714 F.3d 971 (7th Cir. 2013) .............................................................. 14

*McEnroy v. St. Meinrad Sch. of Theology,*
  713 N.E.2d 334 (Ind. Ct. App. 1999)............................................. 13, 14

*McMahon v. College,*
  No. 04-C-0384, 2005 WL 8162996 (E.D. Wis. Jan. 18, 2005) ................. 8

*Mitchell v. Helms,*
  530 U.S. 793 (2000) ........................................................................... 16

*NAACP v. Claiborne Hardware Co.,*
458 U.S. 886 (1982) ........................................................................ 20

*NLRB v. Catholic Bishop of Chi.,*
440 U.S. 490 (1979) ................................................................... 10, 20

*Obergefell v. Hodges,*
135 S. Ct. 2584 (2015) ............................................................... 11, 19

*Olson v. Paine, Webber, Jackson & Curtis, Inc.,*
806 F.2d 731 (7th Cir. 1986) ......................................................... 7, 8

*Othon v. Wesleyan Univ.,*
No. 3:18-CV-00958 (KAD), 2020 WL 1492864
(D. Conn. Mar. 27, 2020) .............................................................. 7, 8

*Our Lady's Inn v. City of St. Louis,*
349 F. Supp. 3d 805 (E.D. Mo. 2018) ............................................. 18

*Peele v. Country Mut. Ins. Co.,*
288 F.3d 319 (7th Cir. 2002) ............................................................ 5

*Petruska v. Gannon Univ.,*
462 F.3d 294 (3d Cir. 2006) ............................................................. 4

*Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Church,*
393 U.S. 440 (1969) ........................................................................ 15

*Rayburn v. Gen. Conf. of Seventh-day Adventists,*
772 F.2d 1164 (4th Cir. 1985) .......................................................... 4

*Redhead v. Conf. of Seventh-day Adventists,*
566 F. Supp. 2d 125 (E.D.N.Y. 2008) ............................................. 18

*Roberts v. U.S. Jaycees,*
468 U.S. 609 (1984) ................................................................... 18, 19

*RWJ Mgmt. Co. v. BP Products N. Am., Inc.,*
672 F.3d 476 (7th Cir. 2012) .......................................................... 13

*Shannon v. Mem'l Drive Presbyterian Church U.S.,*
476 S.W.3d 612 (Tex. App. 2015) ................................................... 14

*Smith v. Angel Food Ministries, Inc.,*
611 F. Supp. 2d 1346 (N.D. Ga. 2009) ............................................. 3

*Sterlinski v. Catholic Bishop of Chi.*,
    934 F.3d 568 (7th Cir. 2019) ...................................................................... 6, 15, 20

*Synder v. Phelps*,
    562 U.S. 443 (2011) ...................................................................................... 20

*Telescope Media Grp. v. Lucero*,
    936 F.3d 740 (8th Cir. 2019) ....................................................................... 18

*Waid v. Merrill Area Pub. Schs.*,
    91 F.3d 857 (7th Cir. 1996) ........................................................................ 7, 8

*Washington v. Safer Found.*,
    274 F. App'x 484 (7th Cir. 2008) .................................................................. 5

*Westfield Ins. Co. v. Sheehan Const. Co.*,
    564 F.3d 817 (7th Cir. 2009) ....................................................................... 11

## Statutes

20 U.S.C. § 1681 ................................................................................................... 8

42 U.S.C. § 2000e .................................................................................... 1, 2, 3, 4

42 U.S.C. § 2000e-1 ......................................................................................... 1, 2

42 U.S.C. § 2000e-2 ............................................................................................ 1

## Other Authorities

Catechism of the Catholic Church ........................................................ 9, 15, 16, 17

Code of Canon Law, Canon 803 ....................................................................... 8, 14

Code of Canon Law, Canons 1156-1160 .............................................................. 15

# INTRODUCTION

Starkey does not dispute that she knowingly violated her contract. Nor does she dispute that her lawsuit would punish the Catholic Church for acting on millennia-old teachings about marriage. Instead, she welcomes that result, asking for a jury trial on whether the Archdiocese has enforced "similar Church teachings" consistently. Dkt. 67 at 25. Such a trial is foreclosed by the text of Title VII and Title IX, by the Constitution, and by Supreme Court precedent—which forbid government entanglement in religious questions and protect the right of religious groups to hire only those who are committed to their mission. Her suit must be dismissed.

# ARGUMENT

## I. Starkey's federal claims are barred under Title VII and Title IX.

Starkey's federal claims are foreclosed by statutory religious exemptions and by her own complaint, which demonstrates that she was nonrenewed for a legitimate, nondiscriminatory reason. Her arguments to the contrary cannot be reconciled with the statutory text or the weight of precedent.

### A. Title VII does not apply to decisions by religious employers based on an employee's religious observances and practices.

Title VII states that it "shall not apply" to religious employers when they employ individuals based on their particular religious "belief," "observance," or "practice." 42 U.S.C. §§ 2000e-1(a), 2000e-2(e)(2), 2000e(j). Here, the Archdiocese nonrenewed Starkey because she rejects the Church's "belief" and "practice" of marriage between one man and one woman. Dkt. 59 at 11-12. Her Title VII claims are therefore barred.

Starkey doesn't dispute that the Archdiocese is a religious employer covered by the exemptions, or that it nonrenewed her contract because of her rejection of Church teaching. *See* Dkt. 67 at 7-10. Instead, she argues that the exemptions don't apply because she claims "sexual orientation discrimination, not religious discrimination." Dkt. 67 at 10. But the exemptions don't turn on how the employee articulates her

claims; they turn on the basis for the employer's actions—whether the employer's decision was based on the employee's religious "belief," "observance," or "practice." 42 U.S.C. § 2000e(j). If so, the exemptions apply. This is evident from both text and precedent.

Section 702(a) provides that "*[t]his subchapter* shall not apply" to religious employers "with respect to the employment of individuals of a particular religion." 42 U.S.C. § 2000e-1(a) (emphasis added). "[R]eligion" is then defined to include not just "belief," but "all aspects of religious observance and practice." *Id.* § 2000e(j). This exemption has a simple structure: "[law X] shall not apply" to religious employers "with respect to [conduct Y]." The *law* that shall not apply is "[t]his subchapter"—which is *all* of Title VII, not just the ban on religious discrimination. *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 192-94 (4th Cir. 2011). And the *conduct* that is protected is the "employment of individuals of a particular" "belief," "observance," or "practice." Thus, the meaning is clear: When a religious employer engages in the relevant conduct—making an employment decision based on an individual's religious "belief," "observance," or "practice"—Title VII does not apply.

If Congress wanted to limit this exemption to religious-discrimination *claims*, it easily could have done so. It could have changed the *law* that shall not apply—from "[t]his subchapter" to "[t]his subchapter's *prohibition on religious discrimination*." Alternatively, it could have framed the exemption in terms of the plaintiff's *claim* instead of the employer's *conduct*—stating that this subchapter shall not apply to a religious employer "with respect to *claims of religious discrimination*." It did neither. Instead, it barred application of *all* Title VII claims when a religious employer makes a decision based on an individual's religious beliefs, observances, or practices.

Starkey ignores the text, skipping to caselaw. But caselaw only reinforces the text. As Starkey concedes (at 9), multiple courts have said Title VII's religious exemptions can bar sex-discrimination claims. *Curay-Cramer v. Ursuline Acad. of Wilm., Del.,*

*Inc.*, 450 F.3d 130 (3d Cir. 2006); *EEOC v. Miss. Coll.*, 626 F.2d 477 (5th Cir. 1980); *Maguire v. Marquette Univ.*, 627 F. Supp. 1499 (E.D. Wis. 1986), *aff'd and vacated in part*, 814 F.2d 1213 (7th Cir. 1987). Starkey's attempts to distinguish these cases fail.

First, Starkey argues that *Curay-Cramer* applied the exemption because of "the First Amendment and constitutional avoidance." Dkt. 67 at 9. But constitutional avoidance only underscores the difficulty of Starkey's position: she must not only re-but the Archdiocese's plain-language interpretation of the text but also show that Congress manifested a "clear legislative intent" in favor of hers. *Curay-Cramer*, 450 F.3d at 138; *see* Dkt. 59 at 32-33; *infra* II.D. She cannot do so. Instead, *Curay-Cramer* squarely rejects Starkey's interpretation, holding that Title VII's religious exemp-tions can bar "a plaintiff's claim of gender discrimination." 450 F.3d at 141.

Next, Starkey says (at 9-10) that unlike the *Mississippi College* defendant, the Archdiocese doesn't claim to have acted "on the basis of" Starkey's "religion." But that's exactly what the Archdiocese claims (and the pleadings show)—it nonrenewed Starkey's contract because she rejected the religious "belief" and "practice" of abstain-ing from same-sex unions. 42 U.S.C. § 2000e(j). Nor has this holding of *Mississippi College* "been called into question … within its own Circuit." *Cf.* Dkt. 67 at 10. The case Starkey cites questioned only *Mississippi College*'s suggestion that the exemp-tion was "*jurisdictional*"—not its holding on the exemption's *scope. Smith v. Angel Food Ministries, Inc.*, 611 F. Supp. 2d 1346, 1348 (N.D. Ga. 2009) (emphasis added).

Finally, Starkey claims *Maguire*'s "analysis was significantly impacted" by the nature of the job the plaintiff sought. Dkt. 67 at 10. But Starkey was contractually designated "a minister of the faith" and tasked with students' "faith formation." Dkt. 59-3 ¶¶ II, III. And setting that aside, Starkey misreads the opinion: *Maguire* didn't just eschew interference with the hiring of a theology professor, 627 F. Supp. at 1503-05; it *also* applied Title VII's religious exemption to bar a claim of sex discrimination, *id.* at 1502-03, 1506-07. That is because—as Starkey doesn't dispute—the exemption

3

applies to "all employees." *Little v. Weurl*, 929 F.2d 944, 950 (3d Cir. 1991).

Meanwhile, none of Starkey's Circuit cases (at 8) rejected application of the religious exemptions where, as here, the employer's alleged sex (or sexual-orientation) discrimination was based on religious standards. *Kennedy* involved only religious-discrimination claims. 657 F.3d at 192. And in Starkey's other cases, either the Title VII exemptions weren't at issue in the appeal, *Petruska v. Gannon Univ.*, 462 F.3d 294, 299 (3d Cir. 2006) (affirming judgment for employer on ministerial exception); *Boyd v. Harding Acad. of Memphis, Inc.*, 88 F.3d 410, 412-15 (6th Cir. 1996) (affirming judgment for employer on morals clause), or the employer offered no doctrinal justification for the allegedly discriminatory decisions, *Rayburn v. Gen. Conf. of Seventh-day Adventists*, 772 F.2d 1164, 1169 (4th Cir. 1985); *EEOC v. Pac. Press Publ'g Ass'n*, 676 F.2d 1272, 1279 (9th Cir. 1982). Indeed, in all but one of these cases (*Pac. Press*), the religious employer *prevailed*.

That leaves Starkey with only one district-court decision: *Herx v. Diocese of Ft. Wayne-South Bend, Inc.*, 48 F. Supp. 3d 1168 (N.D. Ind. 2014). But *Herx*'s interpretation of the religious exemption isn't the law of this Circuit, as the Seventh Circuit pointedly noted. 772 F.3d 1085, 1087 (7th Cir. 2014). And the Court shouldn't defer to it here. It conflicts with better-reasoned decisions of *Curay-Cramer*, *Mississippi College*, and *Maguire*—none of which it cites, much less distinguishes. It fails to grapple with the statutory text. *See* 48 F. Supp. 3d at 1174-76. And it never addresses the distinction between "discriminatory decisions on the basis of race, sex, or national origin," *id.*, and decisions based on religious "belief," "observance," or "practice," 42 U.S.C. § 2000e(j)—likely because it never even cites Title VII's definition of "religion."

*Contra Herx*, the governing rule here has been recognized by multiple courts: "[I]t does not violate Title VII … for a parochial school to discharge [an educator] who has publicly engaged in conduct regarded by the school as inconsistent with its religious principles." *Little*, 929 F.2d at 951. Starkey's Title VII claims must be dismissed.

**B. Starkey's breach was a nondiscriminatory reason for nonrenewal.**

Starkey's claims also fail because her complaint shows the Archdiocese nonrenewed her contract for a legitimate, nondiscriminatory reason: her violation of the contract's "morals clause" by entering a same-sex union. Dkt. 59 at 13-14. Starkey "does not dispute that [s]he was aware of [this clause] and violated it. That is enough to doom" her case. *Washington v. Safer Found.*, 274 F. App'x 484, 485 (7th Cir. 2008).

Starkey says dismissal under the morals clause is "premature." Dkt. 67 at 11. But courts dismiss Title VII claims on the pleadings when the complaint shows the employer acted for unprohibited reasons. Dkt. 59 at 14 (collecting cases). Indeed, before the defendant assumes "the burden of stating the reasons for" its action, the plaintiff must show, as part of her *prima facie* case, that she "was meeting h[er] employer's legitimate expectations." *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1178-80 (7th Cir. 1997). Starkey's complaint shows she wasn't: the Archdiocese expected her to "convey and be supportive of" Church teachings on marriage and not enter "[r]elationships … contrary to a valid marriage as seen through the eyes of the" Church, Ex.1 ¶ 6(i), (j), Ex.2 ¶ V.A; she violated those expectations, Compl. ¶ 26, Dkt. 1.

Starkey says she can overcome these failings by showing she was treated worse than employees who entered opposite-sex relationships in violation of Church teaching. Dkt. 67 at 12-15. But the First Amendment forecloses that path here. The differential treatment Starkey alleges would suggest pretext only if entering a same-sex union and entering other improper relationships are equally "sever[e] … violations of Church doctrine"—itself a religious question. *Curay-Cramer*, 450 F.3d at 137. Even for equal violations, the court would have to weigh "differentiating or mitigating circumstances" under Church teaching, *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) (emphasis omitted)—such as an individual's contrition, intention to avoid future sin, and ability to continue as a witness in ministry. Adjudicating such questions "would violate the First Amendment." *Curay-Cramer*, 450 F.3d at 139.

*Cline* and *Herx* (Dkt. 67 at 12-13) don't require otherwise. Those courts held that although the plaintiff violated a contractual morals clause—in *Cline*, through pre-marital sex, in *Herx* through in vitro fertilization—a jury could find sex discrimination if male employees who participated in premarital sex or IVF would have been treated more favorably. *Cline v. Catholic Diocese of Toledo*, 206 F. 3d 651, 666-67 (6th Cir. 2000); 48 F. Supp. 3d at 1179. So there, the plaintiff and the comparator would have "committed essentially the same offense." *Curay-Cramer*, 450 F.3d at 141. Here, Starkey proposes to compare her entering a same-sex union with (for example) another employee's remarrying after divorce. Dkt. 67 at 13. That is different conduct, giving rise to a different "offense"—and holding otherwise would impermissibly "reject a church's characterization of its own theology." *Sterlinski v. Catholic Bishop of Chi.*, 934 F.3d 568, 570 (7th Cir. 2019); *see infra* II.B. Because Starkey's complaint shows she wasn't meeting the Archdiocese's legitimate expectations and was nonrenewed for a legitimate, nondiscriminatory reason, her claims must be dismissed.

### C. Starkey has failed to allege that the challenged decision was motivated by sexual orientation, rather than Church teachings.

A nonrenewal based on conduct and views—here, entering a same-sex union and rejecting Church teaching—is "based on belief and behavior rather than status." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 860 (7th Cir. 2006). It therefore doesn't violate Title VII. Dkt. 59 at 14-16.  Starkey claims that "[c]ourts do not recognize such a distinction." Dkt. 67 at 15. But *Walker* forecloses this argument: It held that a religious group's policy requiring members to support and follow the group's beliefs about marriage was permissibly "based on belief and behavior rather than status." 453 F.3d at 860. That is this case.

*Martinez* and *Lawrence* don't change the result. *Cf.* Dkt. 67 at 15-16. *Lawrence* was decided *before Walker* and addressed the due-process analysis "[w]hen homosexual conduct is *made criminal* by" state law, *Lawrence v. Texas*, 539 U.S. 558, 575

(2003) (emphasis added)—a context far removed from that of *Walker* and this case. And we've already explained why *Christian Legal Soc'y v. Martinez*, 561 U.S. 661 (2010), doesn't displace *Walker* on the relevant point. *See* Dkt. 59 at 16 n.2. Far from showing otherwise, Starkey *admits* that *Martinez* didn't "expressly overrule" *Walker*, Dkt. 67 at 33—meaning this Court remains bound by it. *See Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734, 741 (7th Cir. 1986) ("high standard" for district court "to reject a doctrine developed by" the Seventh Circuit).

Finally, Starkey again invokes *Cline* and *Herx*. Dkt. 67 at 15. But in addition to being distinguishable, *supra* I.B, neither case addresses the status–conduct distinction adopted in *Walker*. They therefore provide no grounds to distinguish *Walker*, much less displace binding Seventh Circuit precedent.

### D. Starkey's Title IX claim is preempted by Title VII.

Turning to Title IX, it is settled law in this Circuit that "*all* employment-discrimination claims must be brought under Title VII," including "claim[s] under Title IX." *Brown v. Ill. Dep't of Human Res.*, 717 F. App'x 623, 625-26 (7th Cir. 2018) (emphasis added) (citing *Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857 (7th Cir. 1996), *abrogated in part by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009)); *see* Dkt. 59 at 17 (collecting cases). That principle requires dismissal of Starkey's Title IX claim.

The sole case Starkey musters in response—*Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, 171 F. Supp. 3d 830 (W.D. Wis. 2016) (summary judgment for employer), *aff'd on other grounds*, 851 F.3d 690, 695 (7th Cir. 2017)—doesn't require otherwise. *Burton* concluded that *Waid* doesn't apply to Title IX "retaliation" claims against employers, 171 F. Supp. 3d at 839-40, because the Supreme Court entertained such a claim in *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005).

But there is no conflict between *Jackson* and *Waid*. The *Jackson* plaintiff had "no actionable claim under Title VII," because the underlying sex discrimination wasn't in employment. *Othon v. Wesleyan Univ.*, No. 3:18-CV-00958 (KAD), 2020 WL

1492864, at *10 (D. Conn. Mar. 27, 2020). Thus, "*Jackson* does not shed light on the [preemptive] impact of Title VII on … Title IX" retaliation claims in cases like this one. *Id.*; *see* Compl. ¶¶ 73, 76. Rather, *Waid*'s reasoning—that where Title VII and Title IX "overlap," Title VII trumps—fully applies. 91 F.3d at 861-62; *see Othon*, 2020 WL 1492864, at *9-11; *Hung Nguyen v. Regents of Univ. of Cal.*, No. 8:17-CV-00423-JVS-KES, 2018 WL 5886018, at *7 (C.D. Cal. Sept. 17, 2018); *McMahon v. College*, No. 04-C-0384, 2005 WL 8162996, at *4 (E.D. Wis. Jan. 18, 2005). Absent any "basis to go beyond" this Circuit's "uniform findings that employment discrimination claims under Title IX are preempted by Title VII under *Waid*," *Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 790 (N.D. Ill. 2015), Starkey's Title IX claim fails.

**E. Starkey's Title IX claim is barred by the religious exemption.**

Title IX also does not apply to "educational institution[s] … controlled by a religious organization" if application would "not be consistent" with the organization's "religious tenets." 20 U.S.C. § 1681(a)(3). Here, taking Starkey's allegations as true, she was nonrenewed because she "oppos[ed]," in word and deed, both the Archdiocese's religious tenets on marriage and its canon-law application of those tenets to educators in Catholic schools. Compl. ¶¶ 50, 60; Code of Canon Law, Canon 803 § 2 (requiring teachers to be "outstanding in correct doctrine and integrity of life"), *available at* https://perma.cc/J6B7-4ENY. So the Archdiocese's action "was rooted in the Catholic church's doctrinal opposition to same-sex marriage," *Garrick v. Moody Bible Inst.*, 412 F. Supp. 3d 859, 871 & n.5 (N.D. Ill. 2019), requiring dismissal of Starkey's Title IX claim.

Starkey doesn't dispute that Roncalli is an educational institution controlled by the Archdiocese. She only states that, in her view, there is "nothing in the tenets of the Catholic Church condoning retaliation." Dkt. 67 at 18. But consistent with church law, Starkey's contract required her to "*convey* and *be supportive* of the teachings of

the Catholic Church," including "the belief that all persons are called to respect human sexuality and its expression in the Sacrament of Marriage." Dkt. 59-3 ¶ V.A (emphasis added). Starkey violated that requirement when she opposed the Archdiocese's application of its doctrinal standards to Fitzgerald, and it would be inconsistent with the Archdiocese's tenets to require it to retain her nonetheless. The complaint itself even quotes religious language to describe her retaliation claim, saying "Defendants retaliated against Starkey for causing a 'scandal' through" public opposition to Catholic teaching on marriage and teacher expectations. Compl. ¶ 76; Catechism of the Catholic Church ¶¶ 2284-87 ("scandal" defined as "lead[ing] others to do wrong"), *available at* https://perma.cc/M94T-VS8B.

Starkey cites *Goodman v. Archbishop Curley High Sch., Inc.*, 149 F. Supp. 3d 577 (D. Md. 2016), but that case proposes a rule for where there is a dispute over the reasons for the plaintiff's termination. *Id.* at 581, 586 (complaint alleged termination for reporting sex abuse; defendant alleged termination for breach of Canon Law in delaying such reporting). Here, taking Starkey's complaint as true, this case falls under *Moody Bible*, where the "doctrinal views" against the "advocacy" were undisputed. 412 F. Supp. 3d at 871-72. So Starkey's Title IX claim must be dismissed.

### F. Neither Title VII nor Title IX applies to claims of discrimination based on sexual orientation.

The Archdiocese rests on its opening brief to preserve the argument that Title VII and Title IX do not apply to sexual orientation claims. Both parties agree this issue is appropriate for supplemental briefing upon the Supreme Court's resolution of *Zarda*, *Bostock*, and (if relevant) *Harris Funeral*. Dkt. 67 at 19.

## II. All of Starkey's claims are barred by the First Amendment.

Starkey's claims are also foreclosed by the First Amendment doctrines of religious autonomy, non-entanglement, and expressive association. Applying these doctrines

would not, as Starkey claims, bestow "absolute, blanket protection" against discrimination claims. Dkt. 67 at 19. Rather, it would recognize the "obvious fact" that for "parochial schools" to achieve their "*raison d'être* of … propagati[ng] a religious faith," *NLRB v. Catholic Bishop of Chi.*, 440 U.S. 490, 503 (1979) (quoting *Lemon v. Kurtzman*, 403 U.S. 602, 628 (1971) (Douglas, J., concurring)), they must be allowed to require their leaders to agree with that faith.

### A. Starkey's claims are barred by religious autonomy.

#### 1. Starkey's federal claims are barred by religious autonomy.

Starkey's Title VII and IX claims are barred by religious autonomy—*i.e.*, religious organizations' First Amendment right to "shape their own missions, conduct their own ministries, and generally govern themselves in accordance with their own doctrines." *Korte v. Sebelius*, 735 F.3d 654, 677 (7th Cir. 2013). Religious autonomy includes the right to make employment decisions respecting "ministers" for any reason—"secular or religious." *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 703 (7th Cir. 2003). It also includes a right to make employment decisions "based on religious doctrine," even when the affected employee is not a "minister." *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 657-60, 658 n.2 (10th Cir. 2002). Here, because the Archdiocese's decision was based on religious doctrine—Starkey's rejection of the Church's teaching on marriage, Compl. ¶ 45—her claims are barred.

In response, Starkey concedes that the Tenth Circuit and two in-Circuit decisions have applied religious autonomy doctrine to dismiss Title VII claims, like hers, that challenged a religious organization's application of religious doctrine in employment. *Bryce*, 289 F.3d 648; *Moody Bible*, 412 F. Supp. 3d 859; *Demkovich v. St. Andrew the Apostle Parish*, 343 F. Supp. 3d 772 (N.D. Ill. 2018). She simply says these decisions are too "expansive" and "not persuasive." Dkt. 67 at 20. But her disagreement with the doctrine doesn't make it any less the law. That "neither the U.S. Supreme Court nor the Seventh Circuit" have (yet) addressed the issue, *id.*, reflects the strength of

Title VII's religious exemption and the ministerial exception, *Korte*, 735 F.3d at 677, not lack of protection for employment decisions based on religious doctrine.

Starkey's purported distinctions of *Bryce*, *Moody Bible*, and *Demkovich* are meritless. Regarding *Bryce*—which barred a claim by a church employee fired for entering a same-sex union—Starkey first notes it was decided "eighteen years ago." Dkt. 67 at 20. But "judicial decisions" don't have "expiration dates," *Westfield Ins. Co. v. Sheehan Const. Co.*, 564 F.3d 817, 819 (7th Cir. 2009), and *Bryce* was central to *Demkovich* and *Moody Bible*——decided in 2018 and 2019 respectively. *Demkovich*, 343 F. Supp. 3d at 782; *Moody Bible*, 412 F. Supp. 3d at 871.

Nor has *Bryce* been "limited" by *Hively*, *Obergefell*, or *Hosanna-Tabor*. *Cf.* Dkt. 67 at 20-21. *Hosanna-Tabor* cited *Bryce* favorably, *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188 & n.2 (2012), and recognized that religious autonomy required the ministerial exception; it didn't say decisions involving non-ministers were unprotected. *Hively* "saved for another day" the "[a]dditional complications" in cases involving "religious institution[s]"—expressly noting that "a religious employer may be exempted from Title VII liability because they have a bona fide need to discriminate on the basis of a protected characteristic." *Hively v. Ivy Tech Cmty. Coll. of Ind.,* 853 F.3d 339, 351-52, 351 n.7 (7th Cir. 2017). And *Obergefell* said "[t]he First Amendment ensures that religious organizations" are granted "proper protection as they seek to teach" that "by divine precepts, same-sex marriage should not be condoned." *Obergefell v. Hodges,* 135 S. Ct. 2584, 2607 (2015). That's the same protection *Bryce* affords and the Archdiocese seeks.

Turning to *Bryce*'s substance, Starkey argues that because the *Bryce* plaintiff's claim was for "sexual harassment" based on the church's "communications" about the implications of its teachings for the plaintiff's employment, its "relevance … is limited to Starkey's" hostile-work-environment claim. Dkt. 67 at 20-21. But that ignores

*Bryce*'s holding: "When a church *makes a personnel decision* based on religious doctrine, and holds meetings to discuss that decision and the ecclesiastical doctrine underlying it, the courts will not intervene." 289 F.3d at 660 (emphasis added). *Bryce* doesn't pit "personnel decision[s]" against "communications." It protects both. And that makes sense. Religious autonomy protects religious groups' ability to employ "only those committed to" their shared "religious mission," *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 342 (1987) (Brennan, J., concurring); thus, they must be able not just to "discuss" doctrinal qualifications for employment but to act on them.

Starkey likewise fails to distinguish *Demkovich*. Although conceding that *Demkovich* applied religious autonomy, not the ministerial exception, she notes that the court thought Demkovich's "status as a minister weigh[ed] in favor of more protections." Dkt. 67 at 21 (quoting 343 F. Supp. 3d at 786). So too here: Starkey was contractually designated as a minister and entrusted with students' faith formation. Dkt. 59-3 ¶¶ II, III. Starkey also declines to explain *why* ministerial status mattered in *Demkovich*—because the court expected the defendant might "assert that it has a heightened interest in opposing same-sex marriage amongst those who fulfill ministerial roles," requiring "intrusive discovery on the sincerity of that belief." 343 F. Supp. 3d at 786-87. So too here: Entertaining Starkey's claims would require "intrusive discovery on the sincerity of" the Archdiocese's belief that same-sex unions are distinct from other actions Starkey groups together as "invalid marriages." Dkt. 67 at 29; *see infra* Part II.B. Last, Starkey suggests *Demkovich* turned on the fact that the alleged hostile work environment arose from "just 'remarks and insults,'" rather than "actions." Dkt. 67 at 22. But *Demkovich* said the opposite: if "harassing statements *and conduct*" would be "defend[ed]" as "motivated by an official Church position," religious autonomy applies. 343 F. Supp. 3d at 786 (emphasis added).

Finally, Starkey attempts to distinguish *Moody Bible* on the ground that, although

it dismissed discriminatory-discharge, hostile-work-environment, and retaliation claims on the pleadings, it allowed claims "untethered from [the plaintiff's] disagreements with Moody's religious views" to be re-pled. *Moody Bible*, 412 F. Supp. 3d at 872. But Starkey doesn't identify any claims here that are untethered from her disagreement with Church teaching on same-sex conduct, and there are none.

Unable to distinguish the Archdiocese's cases, Starkey offers a string cite of "courts [that] have applied Title VII to religious employers for decades, even when the employer defends the claim by asserting a religious reason for the decision." Dkt. 67 at 22. But none of these cases addressed the autonomy argument at issue here, which explains why *Bryce*, *Demkovich*, and *Moody Bible* saw no need to distinguish them. Nor did they entertain claims, like Starkey's, asking the court to determine what constitutes "similar Church teachings," Dkt. 67 at 25; indeed, some explicitly *contrast* such claims. *See, e.g., Dias v. Archdiocese of Cincinnati*, No. 1:11-cv-00251, 2013 WL 360355, at *5-6 (S.D. Ohio Jan. 30, 2013) (different practices "might be viewed differently"). So none of these cases undermine religious autonomy here.

**2. Starkey's state claims are barred by religious autonomy.**

Because Starkey's federal claims fail, the Court should relinquish jurisdiction over the state claims. *RWJ Mgmt. Co. v. BP Products N. Am., Inc.*, 672 F.3d 476, 482 (7th Cir. 2012). Regardless, Indiana courts have repeatedly invoked religious autonomy to bar tortious interference claims like Starkey's. *McEnroy v. St. Meinrad Sch. of Theology*, 713 N.E.2d 334, 336 (Ind. Ct. App. 1999); *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 294 (Ind. 2003); *see* Dkt. 59 at 24-26.

Starkey claims *McEnroy* is different because it involved a "theology professor" who "public[ly] dissent[ed]" from Church teaching. Dkt. 67 at 26. But Starkey *did* publicly dissent from Church teaching. *See* Compl. ¶¶ 35-43. And *McEnroy* did not turn on the nature of plaintiff's position, but on whether resolving her *claims* would ask the court to decide whether her conduct rendered her "seriously deficient" under Canon

13

Law—the same "entangle[ment] in religious affairs" Starkey's claims require. 713 N.E.2d at 337; *see* Code of Canon Law, Canon 803 (standards for Catholic educators).

Starkey's contrast with *Brazauskas* is likewise unavailing. Apart from relying on the dissent, she states only that she "was not directly employed by the Archdiocese, and did not sue the Archdiocese before she got fired." Dkt. 67 at 26. Neither fact figured in *Brazauskas's* analysis, and there is no meaningful difference between a pre-termination lawsuit in *Brazauskas* and the pre-nonrenewal EEOC complaint here.

Starkey's remaining authorities—none from Indiana—are offered to show "religious entities are not exempt from the operation of secular laws," Dkt. 67 at 27, a proposition the Archdiocese doesn't as a general matter contest. And none required "address[ing] the Church's standards of morality" in the intrusive manner necessary to adjudicate Starkey's state claims. *E.g.*, *Shannon v. Mem'l Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 624 (Tex. App. 2015).

**B. Starkey's claims are barred because they would impermissibly entangle the Court in religious questions.**

Starkey's claims are also barred because they would impermissibly entangle the court in "religious questions." *McCarthy v. Fuller*, 714 F.3d 971, 980 (7th Cir. 2013). Starkey proposes to show sexual-orientation discrimination by showing she has been treated worse than "heterosexual employees" who entered other "relationships that the Catholic Church does not recognize as 'valid.'" Dkt. 67 at 13-14. But that would be probative only if her conduct and that of the alleged comparators are equally "sever[e] … violations of Church doctrine"—an inquiry that would "violate the First Amendment." *Curay-Cramer*, 450 F.3d at 137, 139.

Starkey doesn't dispute the blackletter prohibition on judicial resolution of religious questions. *See* Dkt. 67 at 28-30. Instead, she argues her claims avoid this obstacle because they ask the Court to compare her conduct only to that of hypothetical employees who violated "similar Church teachings," which she identifies as including

the Church's opposition to "re-marriage following a divorce," "cohabitational relationships," and "marriage without the sacrament." *Id.* at 13, 25.

But no neutral "principle of law or logic" "can be brought to bear" to determine whether these or any other Church teachings are "similar" as a matter of federal law. *Emp't Div. v. Smith*, 494 U.S. 872, 887 (1990). To do so would require this Court "to determine matters at the very core of" the Catholic faith—"the interpretation of particular church doctrines" and the relative "importance of those doctrines[.] Plainly, the First Amendment forbids civil courts from playing such a role." *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Church*, 393 U.S. 440, 449-50 (1969).

And indeed, the Catechism and Canon Law distinguish the very examples Starkey offers, addressing them in separate provisions and describing distinct moral issues raised by each. The "invalid marriages" Starkey invokes appear in the Catechism chapter on matrimony, along with other offenses Starkey doesn't mention, like "polygamy" and "refusal of fertility." Catechism ¶¶ 1625-66. Meanwhile, "homosexual acts" are dealt with in the separate chapter on the Sixth Commandment, *id.* ¶¶ 2357-59, along with (but in a subchapter distinct from) other "offenses against chastity," *id.* ¶¶ 2351-56 (also listing, *e.g.*, "lust," "pornography," and "prostitution"). Starkey offers no neutral principle allowing this Court to adopt her grouping of these teachings over the Catechism's. And to do so over the Archdiocese's objection would be to "reject a church's characterization of its own theology"—which the Court cannot do. *Sterlinski*, 934 F.3d at 570.

Moreover, it's easy to see *why* a religious body might treat different relationships that violate Catholic teaching differently. For example, Starkey (at 13, 25) raises "marriage without the sacrament" as a comparator for same-sex unions; but under Canon Law, such marriages can be "convalidated" by renewal of consent "in canonical form." Code of Canon Law, Canons 1156-60. Same-sex relationships, by contrast, are considered "intrinsically disordered" and can "[u]nder no circumstances be approved."

15

Catechism ¶ 2357. And even for identical relationships, the Church considers other religious factors like an individual's contrition, intention to avoid future sin, and ability to continue as a witness in ministry. To compile a list of suitable comparators for Starkey, then, the Court would have to "troll[] through [the Archdiocese's] religious beliefs," *Mitchell v. Helms*, 530 U.S. 793, 828 (2000) (plurality), picking and choosing which conduct contrary to Catholic teaching it views as sufficiently similar to Starkey's conduct, guided by its (or Starkey's) own moral sensibilities. That "religious line-drawing" is "not only … incredibly difficult," but "impermissibl[e]." *Grussgott v. Milwaukee Jewish Day Sch., Inc.*, 882 F.3d 655, 660 (7th Cir. 2018).

Starkey's cases aren't to the contrary. As explained, *Cline* and the district-court decision in *Herx* considered a plaintiff and comparator engaged in the *same* conduct. *See* Part I.B *supra*. These decisions thus don't support Starkey's theory that judges or juries can apply their own theological judgment to identify "similar Church teachings" for purposes of comparison. Indeed, on appeal in *Herx*, the Seventh Circuit emphasized that the district court should be "explicit" in "instruct[ing] the jury *not* to weigh or evaluate" Church doctrine. 772 F.3d at 1091.

Starkey also string-cites (at 28-29) *Boyd*, *Ganzy*, and *Vigars*, but like *Cline* and *Herx* these cases deal with whether a prohibition on the *same* sin—extramarital sex (*Boyd*; *Ganzy*) or adultery (*Vigars*)—was "applied equally to both sexes." *Ganzy v. Allen Christian Sch.*, 995 F. Supp. 340, 349 (E.D.N.Y. 1998). Unsurprisingly, Starkey uncovers *no* case allowing comparison between "offenses" defined under different terms in different Catechism chapters with different reasons for being forbidden.

Starkey's problem isn't solved by the contract using a catch-all term in identifying "[r]elationships that are contrary to a valid marriage" as defaults. Dkt. 59-2 ¶ 6. Again there are many offenses against marriage and chastity under Church teaching; that all can produce "[r]elationships … contrary to a valid marriage" covered by the contract no more makes them equally weighty than the Catechism considering both

16

"bragging" and "perjury" to be "offenses against truth." Catechism ¶¶ 2476, 2481. Indeed, *all* of the contract's default terms—*e.g.*, "[u]nprofessional conduct," "[c]onduct endangering the safety of students or others," or "any personal conduct or lifestyle at variance with … the moral or religious teachings of the Roman Catholic Church"— cover a variety of conduct with a wide range of culpability. Dkt. 59-2 ¶ 6. The Archdiocese may "oppose[]" these actions with a different "degree of conviction and intensity," and "the First Amendment does not permit federal courts to dictate" otherwise. *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 626 (6th Cir. 2000).

Finally, Starkey retreats to a hypothetical, positing a school that claims "under our religion, it is worse for a woman than a man to engage in premarital sex." Dkt. 67 at 29. But as with any religious-freedom claim, the asserted belief would have to be sincere, *Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012)—something Starkey doesn't dispute here but that could well be questioned in her hypothetical. Moreover, in the hypothetical, the comparators' *conduct* would be the same; the only difference would be the status of those engaged in it. That's a far cry from the comparisons of different conduct Starkey invites.

### C. Starkey's claims are barred by freedom of association.

Freedom of association allows an expressive association to disassociate from those whose presence would "significantly affect" its "ability to advocate [its] viewpoints." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648, 650 (2000). The Archdiocese is an expressive association, and punishing it for nonrenewing Starkey—despite her defiance of Church teaching—would undermine its ability to express that teaching. Dkt. 59 at 23-31. So Starkey's claims are barred.

Starkey doesn't dispute that the Archdiocese is an expressive association or that retaining her would impair its expression. *See generally,* Dkt. 67 at 30-34. Rather, she asserts the impairment is "justified" because Title VII and Title IX are "signifi-

cant legislative achievements prohibiting discrimination." *Id.* at 31. But "[e]ven anti-discrimination laws, as critically important as they are, must yield to the Constitution." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 755 (8th Cir. 2019). And Starkey offers no case holding that Title VII and Title IX claims are immune from freedom-of-association defenses where *Dale*'s requirements are met.

To the contrary, one of Starkey's own cases recognizes the defense *could* apply to Title VII if a defendant "contend[ed] … that its religious teachings require[d]" the challenged action. *Redhead v. Conf. of Seventh-day Adventists*, 566 F. Supp. 2d 125, 138 (E.D.N.Y. 2008); *see* Dkt. 67 at 23, 28. And the Supreme Court rejected a freedom-of-association defense to Title VII in *Hishon v. King & Spalding* not because Title VII is immune from such defenses, but because the defendant couldn't show the forced association would "inhibit" expression of its "ideas and beliefs." 467 U.S. 69, 78 (1984).

Indeed, neither Title VII and IX's "significan[ce]" nor the fact that Title VII involves "employment," *cf.* Dkt. 67 at 32-33, suffices to distinguish this case from *Dale* itself. State public-accommodations laws like *Dale*'s are no less important than federal antidiscrimination law; they "provided the primary means for protecting the civil rights of historically disadvantaged groups until the Federal Government reentered the field." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984). And the *Dale* law encompassed efforts to "obtain employment." 530 U.S. at 661-62; *id.* at 698 (Stevens, J., dissenting). More recently, *Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 805 (E.D. Mo. 2018), held freedom of association required that Catholic schools be free not to hire staff who disagree with Church teaching on abortion, despite a city employment-discrimination law. *Id.* at 821-22. That Starkey deems this less-than-two-year-old decision an "outlier" because it "has only been cited in another published court opinion once," Dkt. 67 at 33, reveals her inability to distinguish it.

Starkey worries (at 31) that "in theory almost any employer or school could" invoke freedom-of-association to defeat a Title VII or Title IX claim. But the limits of

18

the Archdiocese's position derive from freedom-of-association precedent itself. The defendant must be expressive and the plaintiff's presence must "affect[] in a significant way the group's ability to advocate public or private viewpoints"—a test that is harder to meet for "clearly commercial entities." *Dale*, 530 U.S. at 648, 657.

Here, the defendant is a nonprofit religious school—the "archetype" of expressive associations. *Hosanna-Tabor*, 565 U.S. at 200 (Alito, J., joined by Kagan, J., concurring). And the Seventh Circuit has already held that freedom of association protects a religious organization that seeks to express "disapproval of homosexual conduct" from being required to retain a representative who "engage[s] in that conduct." *Walker*, 453 F.3d at 863. So far from asking the Court "to go where no Court has gone before," *cf*. Dkt. 67 at 31, the Archdiocese seeks only to reaffirm settled law.

Moreover, even a forced association that would otherwise trigger *Dale* could be justified if it satisfies strict scrutiny—that is, serves "compelling state interests" "that cannot be achieved through" less-restrictive means. *Roberts*, 468 U.S. at 623. The trouble for Starkey is that whether a law satisfies strict scrutiny isn't evaluated in the abstract but as applied to the "particular … claimant[]." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-32 (2006); *Walker*, 453 F.3d at 863. Even assuming Title VII and Title IX serve compelling interests generally, Starkey hasn't shown they do so as applied to religious institutions organizing around shared beliefs. Rather, Congress has recognized that such institutions must be able "to create and maintain communities composed solely of individuals faithful to their doctrinal practices," *Little*, 929 F.2d at 951, providing exemptions in both Title VII and Title IX aimed at protecting just that. *Supra* I.A, I.E. And with respect to the particular belief at issue here—that "same-sex marriage should not be condoned"— the Supreme Court has "emphasized" that religious institutions must have "proper protection as they seek to teach" it, *Obergefell*, 135 S. Ct. at 2607, not that the government has a compelling interest in undermining that message by forcing them to

19

accept leaders who disagree.

Finally, Starkey suggests freedom of association can't bar her state-law claims because they "involve no governmental action." Dkt. 67 at 34. But the Supreme Court has repeatedly held that judicial enforcement of private tort claims is governmental action subject to the First Amendment. *Synder v. Phelps*, 562 U.S. 443, 451 (2011); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 894 (1982). And her claim (at 34) that she is not associating with the Archdiocese if her "employment relationship was with Roncalli" ignores the fact that Roncalli staff are obviously associated with the Archdiocese both as a matter of church law and in the public eye.

### D. Constitutional avoidance requires dismissal of Starkey's claims.

Even if the First Amendment didn't bar Starkey's claims, those claims present "serious constitutional questions" requiring the Court to interpret Title VII and Title IX to avoid them. *Catholic Bishop*, 440 U.S. at 501. Starkey says *Catholic Bishop* doesn't apply because "enforcement of Title VII against religious institutions does not require … continuous supervision of church affairs." Dkt. 67 at 34-35. But *Catholic Bishop* was concerned not only with entanglement-by-supervision but also with entanglement caused by adjudicating "the good faith" of claims that "challenged actions were mandated by … religious creeds," 440 U.S. at 502—the same entanglement implicated by the claims here. That is also why the Third Circuit applied *Catholic Bishop* to dismiss a similar Title VII claim in *Curay-Cramer*. 450 F.3d at 138. The same analysis applies here.

### CONCLUSION

Judgment should be rendered for the Archdiocese.

Respectfully submitted,

By: /s/  Luke W. Goodrich
Luke W. Goodrich (DC # 977736)
Daniel H. Blomberg (DC # 1032624)
Christopher C. Pagliarella (DC # 273493)
The Becket Fund for Religious Liberty
1200 New Hampshire Ave NW
Suite 700
Washington, DC 20036
(202) 955-0095
(202) 955-0090 fax

John S. (Jay) Mercer, #11260-49
Paul J. Carroll, #26296-49
MERCER BELANGER
One Indiana Square, Suite 1500
Indianapolis, IN 46204
(317) 636-3551
(317) 636-6680 fax

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing has been served upon the following on May 5,

2020 by this Court's electronic filing system:


Kathleen A. DeLaney
Christopher S. Stake
DeLaney & DeLaney LLC
3646 N. Washington Boulevard
Indianapolis, IN  46205


By: /s/  Luke W. Goodrich
Luke W. Goodrich (DC # 977736)
The Becket Fund for Religious Liberty
1200 New Hampshire Ave NW
Suite 700
Washington, DC 20036
(202) 955-0095
(202) 955-0090 fax