UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LYNN STARKEY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | )   CAUSE NO.:  1:19-cv-03153-RLY-TAB |
| ROMAN CATHOLIC ARCHDIOCESE | ) |
| OF INDIANAPOLIS, INC. AND | ) |
| RONCALLI HIGH SCHOOL, INC., | ) |
| | ) |
|     Defendants. | ) |

**PLAINTIFF LYNN STARKEY'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION FOR CERTIFICATION FOR
INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

Plaintiff Lynn Starkey ("Starkey"), by counsel, files her Response in Opposition to Defendants the Roman Catholic Archdiocese of Indianapolis and Roncalli High School, Inc. (collectively, "the Archdiocese")'s Motion for Certification for Interlocutory Appeal. Dkt. 95. This Court should deny the Motion to certify its Order on Defendants' Motion for Judgment on the Pleadings (Dkt. 93), and decline all of the Archdiocese's proposed questions for certification. The Archdiocese's Motion fails to meet all of the requirements of 28 U.S.C. § 1292(b) and should be denied.

Starkey's lawsuit has been pending for over 15 months (since July 29, 2019). The case is currently set for trial to begin on February 22, 2021, which is less than four months away. Dkt. 35. Through various motions and procedural maneuvers, the Archdiocese has sought serial rulings on multiple motions and has resisted and thwarted Starkey's attempts to engage in full discovery. Now that the Court has denied the Archdiocese's Motion for Judgment on the Pleadings on all but one of Starkey's claims, the Archdiocese seeks permission for interlocutory

appeal on three grounds.  Certifying any or all of the questions for interlocutory appeal would further prolong and delay proceedings in this case, make discovery and trial preparation more difficult to timely complete, and would be all but certain to postpone the trial.

Additionally, the proposed certified questions, even if resolved in the Archdiocese's favor, would not be "controlling" as they would not automatically result in judgment for the Archdiocese on all of Starkey's claims. Nor are the proposed certified questions contestable, as the Archdiocese has not identified substantial opinions (even from other jurisdictions) supporting its arguments. The Archdiocese fails to meet at least three of the five requirements for certification under 28 U.S.C. §1292(b) and Seventh Circuit precedent.  The Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Starkey was a co-Director of Guidance for Roncalli High School ("Roncalli"). Dkt. 1 at 3. "Roncalli is an archdiocesan high school of which the Archbishop of the Archdiocese of Indianapolis is the sole corporate member." Dkt. 20 at 5. The Archdiocese employed Starkey beginning in 1978, and provided her with employee-related benefits during her employment. Dkt. 1 at 2; Dkt. 20 at 5. Roncalli employed Starkey from 2009 to 2019. Dkt. 20 at 5. Defendants employed Starkey as a guidance counselor from 1998 to 2007, and as co-Director of Guidance from 2007 to 2019. Id. Starkey was employed pursuant to a written contract that was renewed on an annual basis for 39 years. Dkt. 1 at 4; Dkt. 20 at 7.

Starkey is a homosexual female, and has a female spouse, to whom she has been married since 2015. Dkt. 20 at 8. Roncalli's Principal, Chuck Weisenbach, and other Roncalli administrators, were aware of Starkey's sexual orientation and female partner well before August of 2018. Dkt. 1 at 5.

Prior to August 2018, Starkey's counterpart as co-Director of Guidance was Shelly Fitzgerald. *Id*. Fitzgerald is also a homosexual female and married to a female spouse. Dkt. 1 at 5. On August 12, 2018, within two days after learning of her same-sex marriage, Roncalli placed Fitzgerald on paid administrative leave "and requested that she not return to the campus without the permission of the school administrators." Dkt. 20 at 8-9.

On August 14, 2018, Starkey had a conversation with Principal Weisenbach about sharing prepared remarks with the Administrative Council. Dkt. 1 at 6. During that conversation, Principal Weisenbach asked Starkey whether she had a civil union. *Id*. Starkey asked him whether he really wanted to ask her that question. *Id*. Principal Weisenbach said "yes." *Id*. Starkey answered, "yes." *Id*.

On August 21, 2018, Archbishop Thompson published a letter condemning Fitzgerald's marriage, sparking protests at Roncalli from students, teachers, and parents. Dkt. 1 at 6. Once Fitzgerald went on administrative leave, Starkey was required to assume many of Fitzgerald's work responsibilities, in addition to her own, substantially adding to her workload in the Fall 2018 semester. *Id*. On November 16, 2018, Starkey filed Charges of Discrimination with the EEOC against the Archdiocese and Roncalli.  Dkt. 20 at 11-12. Starkey later amended her EEOC Charges on March 25, 2019, and May 9, 2019. Dkt. 20 at 3-4.

In March 2019, Starkey learned that her contract would not be renewed for the 2019-2020 academic year. Dkt. 1 at 6. On May 1, 2019, Starkey received a letter from Principal Weisenbach officially notifying her that she would not be offered a contract for the 2019-2020 school year. Dkt. 20 at 12. The letter stated that Starkey's "civil union is a violation [her] contract and contrary to the teaching of the Catholic Church." *Id*. Starkey's contract expired on August 31, 2019. *Id*.

Starkey filed her Complaint on July 29, 2019, asserting claims for Title VII discrimination, Title VII retaliation, Title VII hostile work environment, Title IX retaliation, tortious interference with contract, and tortious interference with employment relationship. Dkt. 1 at 7-12. On September 9, 2019, the Archdiocese requested a stay of this case until after the U.S. Supreme Court decided two cases[1] relating to the applicability of Title VII to claims for sexual orientation discrimination. Dkt. 12. The Court denied the stay. Dkt. 21. The Archdiocese answered the Complaint on September 27, 2019. Dkt. 20. On November 21, 2019, the Court issued a Scheduling Order, setting the case for a final pretrial conference on February 11, 2021, and a three day jury trial beginning on February 22, 2021. Dkt. 35.

The Archdiocese next filed a Motion to Bifurcate Discovery, seeking to limit discovery to the ministerial exception affirmative defense. Dkt. 25-27. The Court denied the Motion to Bifurcate, and further ordered the Archdiocese to "respond to Starkey's outstanding discovery requests within 14 days of this order." Dkt. 40. The Archdiocese immediately appealed this Order to the District Court Judge under Rule 72(a), and moved for a stay of the Order denying bifurcation. Dkt. 42-45. The Court granted the stay. Dkt. 52. Starkey filed her Response in Opposition to Defendants' Rule 72(a) Motion on January 6, 2020, and Defendants filed their Reply on January 16, 2020. Dkt. 46; Dkt. 54. At no time has either the District Judge or the Magistrate Judge ever ordered that discovery be bifurcated in this case, in spite of the Archdiocese's repeated requests for that relief.

On March 24, 2020, the Archdiocese filed a Motion for Judgment on the Pleadings under Rule 12(c). Dkt. 58. Starkey filed her Response in Opposition on April 21, 2020. Dkt. 67. The Archdiocese filed their Reply on May 5, 2020. Dkt. 69.

---

[1] The two cases were ultimately consolidated and decided together. *Bostock v. Clayton County*, 140 S. Ct. 1731 (U.S. 2020).

On March 26, 2020, the Archdiocese filed a Motion for Leave to File Initial Summary Judgment Motion Based on the Ministerial Exception Defense. Dkt. 60. Starkey filed her Response in Opposition thereto on April 7, 2020. Dkt. 65. The Court denied the Motion for Leave on April 21, 2020. Dkt. 66.

On June 23, 2020, the Court issued an Order Requesting Supplemental Briefing on the Motion for Judgment on the Pleadings to address the U.S. Supreme Court decision in *Bostock v. Clayton County*, which held that Title VII's prohibition of sex discrimination prohibits sexual orientation discrimination. Dkt. 75; *Bostock*, 140 S. Ct. 1731 (2020). Both parties filed supplemental briefs in compliance with the Court's order. Dkt. 76; Dkt. 78. The parties filed additional notices of supplemental authority, and responses thereto, based on subsequent decisions in the U.S. Supreme Court, the Seventh Circuit Court of Appeals, and other federal courts. *See* Dkt. 79; Dkt. 82; Dkt. 87-92.

On October 21, 2020, the Court issued its Entry on Defendants' Motion for Judgment on the Pleadings, which granted the Motion in part, and denied it in part. Dkt. 93. The Court denied the Motion on Starkey's Title VII claims, and her state law claims for tortious interference with contract and tortious interference with employment relationship. *Id*. at 2. The Court granted the Motion on Starkey's Title IX retaliation claim, holding that Title VII preempted it. *Id*. at 25.

On October 22, 2020, Starkey filed a Motion to Lift the Court's Order Granting a Stay so that she could resume full discovery in the case. Dkt. 94.  The Archdiocese opposed that Motion on November 6, 2020.  Dkt. 100.

The Archdiocese has moved to certify the following questions:

(1) Whether Title VII's religious exemption bars only "claims of religious discrimination," Ord. 7, or whether it also bars other claims of discrimination when the employment decision was based on the employee's "religious observance," "practice," or "belief." 42 U.S.C. § 2000e(j).

(2) Whether the church autonomy doctrine bars an employment-discrimination suit only when "the employee qualifies as a minister," Ord. 18, or whether it also bars suits "[w]hen a church makes a personnel decision based on religious doctrine." *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 660 (10th Cir. 2002).

(3) Whether the First Amendment right of expressive association extends to "the employment context." Ord. 22.

Dkt. 95 at 1.

## LEGAL STANDARD

28 U.S.C. § 1292(b) provides, in pertinent part:

When a district judge, in making a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

"A party moving for an interlocutory appeal bears the burden of showing that 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Common Cause Ind. v. Sec'y of State*, No. 1:12-cv-01603-RLY-DML, 2013 U.S. Dist. LEXIS 205227, *2 (S.D. Ind. Nov. 7, 2013) (internal citations omitted). "Stated differently, the grant of an interlocutory appeal is an exception to the general rule that a party may only appeal a final judgment, and, as such, should be granted 'sparingly and with discrimination.'" *Id*. (internal citation omitted). "The decision of whether to grant or deny an interlocutory appeal lies with the discretion of the district court." *Id*. (internal citation omitted).

Under Seventh Circuit precedent, "[t]here are four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Board of Trustees*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original). "There

is also a nonstatutory requirement: the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed." *Id.* at 675-676 (emphasis in original) (internal citation omitted). "Unless *all* these criteria are satisfied, the district court may not and should not certify its order…for an immediate appeal under section 1292(b)." *Id.* at 676 (emphasis in original). "To do so in such circumstances is merely to waste [the appellate court's] time and delay litigation in the district court, since the proceeding in that court normally grinds to a halt as soon as the judge certifies an order in the case for an immediate appeal." *Id*. The Archdiocese fails to satisfy each of these criteria, except for timeliness and questions of law.

## ARGUMENT

### I.    Interlocutory Review Would Delay Final Resolution of this Case.

The Archdiocese's Motion should be denied because an interlocutory appeal would not "likely materially speed up this litigation" – in fact, it would do the opposite. *Valley Forge Renaissance, L.P. v. Greystone Servicing Corp.*, No. 1:09-cv-00131-TWP-MJD, 2012 U.S. Dist. LEXIS 82565, *23 (S.D. Ind. June 14, 2012). In *Valley Forge*, the Court denied a request to certify its summary judgment order for interlocutory appeal under § 1292(b) when a trial was set to begin in approximately one month (July 23, 2012). *Id*. The Court noted that the "median appeal in the Seventh Circuit…was 10.6 months." *Id*. (citing *Coan v. Nightingale Home Healthcare, Inc.*, 2006 U.S. Dist. LEXIS 48193, *4 (S.D. Ind. July 14, 2006)). The Court declined "to allow an appeal where, as here, a trial is fast-approaching." *Id*.

Starkey's trial is scheduled for February 22-24, 2021, which is approximately four months away. Dkt. 35. Although the parties have not completed discovery due to the Archdiocese's various procedural maneuvers, Starkey has recently moved for an order that would permit her to move forward with full discovery. Dkt. 94. With reasonable cooperation and

promptness, the parties can realistically complete discovery in a timely manner and preserve the current trial date.[2]  This Court ordered the Archdiocese to fully respond to Plaintiff's written discovery on December 19, 2019, and later stayed that order, but the requests have been outstanding since October 16, 2019, which has provided more than ample time for documents and information to be gathered.  Plaintiff has requested three depositions.  Defendant has requested one.  An interlocutory appeal, on the other hand, would seriously jeopardize the trial date, because there would be almost no chance that the Seventh Circuit Court of Appeals would decide the appeal before Starkey's trial date. The appeals timetable is almost certain to prolong, rather than speed up, the litigation.

Relying on *Sterk v. Redbox Automated Retail, LLC*, the Archdiocese argues that "all that section 1292(b) requires…is that an immediate appeal *may* materially advance the ultimate termination of the litigation." 672 F.3d 535, 536 (7th Cir. 2012) (emphasis in original). The Archdiocese claims that it meets this standard because "the certified questions…if resolved in the Archdiocese's favor…would obviate the need for further proceedings in their entirety." Dkt. 95-1 at 25. For reasons explained in more detail below, Starkey disagrees that any of the proposed certified questions, if resolved in the Archdiocese's favor, would end the case. But even if this were true (it is not), it ignores the fact that the trial date is currently four months away. The timetable for terminating the litigation through trial (four months) is undisputedly shorter than the timetable through resolving it on appeal (at least ten months). If the Archdiocese does not like the outcome at trial, it will still have the right to file an appeal after the entry of final judgment. Fed. R. App. Pro. 4. This would likely be filed within 30 days of the entry of

---

[2] The Archdiocese filed a Motion for Modification of Case Management Order which requests, *inter alia*, that the Court continue the trial date until July 2021. Dkt. 101 at 4-5. Plaintiff opposes the motion and will file her response promptly. However, an interlocutory appeal would likely not be decided prior to July 2021, so it would not speed up the litigation, either way.

judgment. Fed. R. App. Pro. 4(a)(1)(A). Thus, denying an interlocutory appeal would delay the initiation of any appeal by approximately five months. On the other hand, if the Archdiocese is permitted to appeal now, and the case returns to the District Court at a later date, the trial would likely be continued for a far longer period of time. It may be more difficult to identify a new trial date due to the ongoing COVID-19 pandemic, which temporarily closed courthouse and resulted in the postponement of jury trials.

The Archdiocese claim that its defenses "function…as an immunity from the burdens of discovery and trial." Dkt. 95-1 at p. 26. However, the Court has already rejected the argument that the Archdiocese enjoys "a general immunity from secular laws," and confirmed that "[C]hurches are not exempt from federal employment discrimination laws as applied to their non-ministerial employees." Dkt. 93 at 17 (*citing Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020) *and Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 973 F.3d 718, 723 (7th Cir. 2020)). Moreover, the Seventh Circuit has clarified that the use of the word "immunity" in this context does not confer immunity from discovery or trial, but is better understood as a "privilege or affirmative defense." *Herx v. Diocese of Ft. Wayne-South Bend, Inc.*, 772 F.3d 1085, 1091 (7th Cir. 2014).[3]

Since the trial is over four months away, an interlocutory appeal would not speed up or materially advance the litigation. The Court should deny the Archdiocese's motion for this reason alone.

## II.     The Archdiocese's Certified Questions Are Not Controlling Issues of Law.

---

[3] The Archdiocese indicates that if the Court were to order "unbridled discovery" to proceed, it would immediately appeal under the collateral order doctrine. Dkt. 95-1 at 24-25. "The fact that current practices of discovery are sometimes burdensome and painful, often forcing parties to reveal facts or circumstances they would rather not, is no justification to allow discovery orders to be prematurely appealed[.]" *Stout v. Ill. Farmers Ins. Co.*, 882 F. Supp. 776, 779 (S.D. Ind. 1994). Although *McCarthy v. Fuller* allows interlocutory appeals of under the collateral order doctrine when a district court ordered "a religious question…submitted to a jury," that case is inapplicable here.  714 F.3d 971, 973-974 (7th Cir. 2014). Like in *Herx*, the "circumstances…are not comparable" because the Court has not indicated that it intends to decide (or submit to the jury to decide) a "religious question." *Herx*, 772 F.3d at 1091.

"[A] controlling question of law is a threshold issue which seriously affects the way that the court conducts the litigation (e.g., impacting whether or not the plaintiff has a cause of action under a particular statute)." *Stout*, 882 F. Supp. at 778 (*citing Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991)). The Archdiocese claims that all of their proposed certified questions would be "controlling" because they claim that the entire case would be dismissed if the court's opinion were to be reversed. Dkt. 95-1 at 10, 17, 21. But this is not the case. Even in the unlikely event that the Court's opinion were to be reversed on appeal on one or all of the Archdiocese's proposed certified questions, it would leave further questions about the application of the Archdiocese's various defenses to the facts of this case, which would likely not be able to be resolved until after the completion of discovery. Starkey will address each of the Archdiocese's proposed certified questions separately.

### A.   Title VII Statutory Exemption

The Archdiocese's first certified question asks whether "Title VII's religious exemption bars only 'claims of religious discrimination'…or whether it also bars other claims of discrimination when the employment decision was based on the employee's 'religious observance,' 'practice,' or 'belief.'" Dkt. 95 at 1 (internal citations omitted).

As the Court recognized, Title VII's definition of "religion" includes "all aspects of a religious observance and practice, as well as belief[.]" Dkt. 93 at 8 (citing 42 U.S.C. § 2000e(j)). The Archdiocese attempts to flip this broad definition (intended to protect employees against religious discrimination) on its head to argue that it can somehow be used to limit claims for other protected classes, such as gender. This makes no sense. If Starkey had a claim based on discrimination against her religious observances, practices, or beliefs, she would need to assert a claim for religious discrimination, which she has not done.

Starkey rejects the premise that the Archdiocese did not renew her contract because of her *religious* observance, practice, or belief. There is nothing in the pleadings or record to suggest that Starkey's same-sex marriage (or decision to enter one) is a religious observance, a religious practice, or based on a religious belief. *See* Dkt. 1, 20. The Archdiocese's non-renewal letter even refers to Starkey's relationship as a "civil union," reflecting its understanding that it was civil, rather than religious. Dkt. 20 at 12. The Archdiocese's proposed certified question as to the scope of Title VII's religious exemption would have no impact on this case at all (let alone be controlling), because the religious exemption would still not apply to Starkey's Title VII claims.

The Archdiocese is really arguing that Title VII's religious exemption permits it to take adverse action against an employee when that employee's *secular* practices or conduct violates (or is alleged to violate)[4] the employer's religious beliefs. But that is not the question they have asked the Court to certify, and the Court should not consider it. However, even this question would not be "controlling," because its applicability is limited to Title VII. It would not resolve Starkey's state law claims. The Archdiocese attempts to get around this by claiming that the "normal course" would be for the Court to decline to exercise supplemental jurisdiction over the state law claims if the Title VII claims are dismissed. Dkt. 95-1 at 10. But in that scenario, the Court would have "*broad discretion to decide* whether to keep the case or relinquish supplemental jurisdiction over the state law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 478 (7th Cir. 2012) (emphasis added). And even if the Court decided to dismiss the

---

[4] On October 21, 2020, a documentary was released in which Pope Francis endorsed same-sex civil unions for the first time, stating, "What we have to create is a civil union law. That way they are legally covered. I stood up for that." *See* "Pope Francis declares support for same-sex civil unions for the first time as pope," https://www.americamagazine.org/faith/2020/10/21/pope-francis-gay-civil-uniondocumentary (last visited November 4, 2020); "Homosexual People Have the Right to Be in a Family. Pope Francis Offers New Support for Same-Sex Civil Unions," https://time.com/5902186/pope-francis-supports-same-sex-civil-unions-francesco/ (last visited November 4, 2020).

state law claims, such a dismissal would be without prejudice, and Starkey would be able to refile her case in state court. *See* Ind. Code § 34-11-8-1 (Indiana's "journey account" statute).

### B.     Church Autonomy

The Archdiocese's second proposed certified question is: "[w]hether the church autonomy doctrine bars an employment-discrimination suit only when 'the employee qualifies as a minister,'…or whether it also bars suits '[w]hen a church makes a personnel decision based on religious doctrine.'" Dkt. 95 at 1 (internal citations omitted).

The Court has already ruled that the outcome of the Archdiocese's church autonomy argument hinges on the outcome of the ministerial exception. Dkt. 93 at 17-19. Otherwise, the Archdiocese's "expansive reading of the church autonomy argument would render the ministerial exception superfluous." Dkt. 93 at 18. The Court is correct in its assessment. Even if it is not, that would not necessary end the case or result in the dismissal of Starkey's claims. Even if the church autonomy doctrine permits a defense that is separate and distinct from the ministerial exception, it still is not one to be resolved on a motion for judgment on the pleadings on these facts. As the Seventh Circuit recently held in *Demkovich*, courts may decide cases such as this one "if they avoid issues of faith and stick to applying neutral, secular principles of law." 973 F.3d at 733. Indiana court cases presented with a defense under the church autonomy doctrine have recognized that "[t]he analysis in each case is fact-sensitive and claim specific, requiring an assessment of every issue raised in terms of doctrinal and administrative intrusion and entanglement." *Ind. Area Found. of the United Methodist Church, Inc. v. Snyder*, 953 N.E.2d 1174, 1178 (Ind. Ct. App. 2011) (*citing Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 294 (Ind. 2003). Thus, discovery would be necessary in order to resolve this putative defense. Starkey is not asking this Court to decide any question of religious doctrine,

and has previously explained how the Court can decide this case without doing so. *See* Dkt. 67 at 22-23. If the Court's opinion is reversed, it would still need to conduct this analysis (and likely at a later procedural stage after discovery). A reversal of the Court's opinion would not result in dismissal of the entire case, as the Archdiocese claims, and the issue is not controlling.

**C.      Freedom of Association**

The Archdiocese's third and final proposed certified question is "[w]hether the First Amendment right of expressive association extends to the 'employment context.'" Dkt. 95 at 1 (internal citation omitted). The Court correctly noted that "the Supreme Court has explicitly rejected a freedom of association defense in the employment context." Dkt. 93 at 23 (*citing Hishon v. King*, 467 U.S. 69, 78 (1984)). The Court concluded that this defense does not apply, as it, too would render the ministerial exception "unnecessary." Dkt. 93 at 23.

The Court's ruling is not a controlling legal question. Even if the freedom of association defense applies in this context (it is not), the defense is not "absolute." *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984). Instead, the defense may be outweighed by "regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Id*.

The Archdiocese claims that if the freedom of association "extends to employment…then Starkey's claims are barred[.]" This wholly ignores the balancing that the Court would be required to conduct under a freedom of association analysis, as described in *Roberts*. In the unlikely event that the Court is reversed on this issue, then the Court would have to engage in that balancing. It would be premature to engage in such balancing until the parties have a full opportunity to complete discovery in this matter, and it would not be ripe for resolution on a Rule 12 motion. Thus, it is not a controlling issue of law.

### III.      The Archdiocese's Certified Questions are Not Contestable.

Even if the Archdiocese can meet the other requirements for an interlocutory appeal (it cannot) the issues it seeks to certify for interlocutory appeal are not contestable.  For an issue to be "contestable" under section 1292(b), the moving party must "set forth substantial conflicting decisions regarding the claimed controlling issue of law." *Carlson v. Brandt*, No. 97-2165, 1997 U.S. Dist. LEXIS 12821, *24 (N.D. Ill. Aug. 22, 1997). The "mere lack of judicial precedent on [an] issue does not establish substantial ground for difference of opinion." *In re Bridgestone/Firestone, Inc.*, 212 F. Supp. 2d 903, 909 (S.D. Ind. 2002) (internal citation omitted). Nor should interlocutory review be granted "merely to provide a review of difficult rulings in hard cases." *Id.* (*citing Praxair, Inc. v. Hinshaw & Culbertson*, No. 97-3079, 1997 U.S. Dist. LEXIS 16707, *6 (N.D. Ill. Oct. 14, 1997)).  Instead, courts "examine 'the strength of the arguments in opposition to the challenged ruling.'" *Id.* (*citing Praxair*).

Furthermore, conflicting authorities must also be "substantial." *Hoffman v. Carefirst of Fort Wayne, Inc.*, No. 1:09-cv-251, 2010 U.S. Dist. LEXIS 107493, *6 (N.D. Ind. Oct. 6, 2010). When a "decision is firmly established within the bounds of distinguishable rather than divergent precedent in the Circuit," there is no substantial ground for difference of opinion and interlocutory appeals should be denied. *Latson v. Ethicon, Inc.*, No. 08-581, 2009 U.S. Dist. LEXIS 106942, *15 (N.D. Ind. Nov. 13, 2009). Starkey will again address each of the Archdiocese's proposed certified questions separately.

### A.  Title VII Statutory Exemption.

The Archdiocese has no substantial conflicting authorities that make their proposed certified question on the Title VII religious exemption contestable. As the Court stated in its Order, "the court is not aware of any cases dealing with the questions presented here." Dkt. 93 at

12. Although the Archdiocese cites the same cases it relied upon in its Motion for Judgment on the Pleadings, the Court has already explained why many of these cases are distinguishable, rather than divergent, authorities. Dkt. 93 at 12-15.

The Archdiocese cites to *Kennedy v. Villa St. Catherine, Inc.*, in which the Defendant successfully sought and obtained permission to interlocutory appeal on a question involving the scope of Title VII's religious exemption. No. PWG-09-3021 (WDQ), 2010 U.S. Dist. LEXIS 145063 (D. Md. June 16, 2010). However the issue in *Kennedy* was very different than here. On appeal, the Fourth Circuit considered whether the religious exemption was limited to "hiring and firing decisions," or also barred claims for "religious harassment and retaliation against religious organizations." *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 191-193 (4th Cir. 2011). *Kennedy* expressly stated that the religious exemption "does not exempt religious organizations from Title VII's provisions barring discrimination on the basis of race, gender, or national origin," so the Court clearly did not believe this question (which the Archdiocese attempts to certify here) to be contestable. *Id*. at 192.

The Archdiocese also claims that the Seventh Circuit has suggested "that the same Title VII question presented here is appropriate for certification." Dkt. 95-1 at 12 (*citing Herx v. Diocese of Fort Wayne-South Bend, Inc.*, 772 F.3d 1085, 1088 (7th Cir. 2014)). The Archdiocese's reliance on *Herx* is misplaced. In *Herx*, the Diocese did not seek an interlocutory appeal under §1292(b), but instead attempted (unsuccessfully) to appeal the denial of summary judgment under the collateral order doctrine. *Id*. The Court dismissed the appeal, holding that the collateral order doctrine did not apply. *Id*. at 1092. The Court briefly noted that "[t]he Diocese did not ask the court to certify the summary-judgment order for immediate appeal…as it might have done." *Id*. at 1088 (*citing Kennedy*). This does not suggest or imply that such an appeal

would have been accepted (or that the District Court should have certified its order), but merely points out that the Diocese could have followed the normal interlocutory appeal process, rather than attempting to circumvent it through the collateral order doctrine. It is of no guidance at all for purposes of determining whether such an appeal (if done properly) would have been accepted.

The Archdiocese's claim that this issue is "contestable" relies on the following cases: *Curay-Cramer v. Ursuline Academy*, 450 F.3d 130, 137-138 (3d Cir. 2006), *Maguire v. Marquette University*, 627 F. Supp. 1499, 1500 (E.D. Wisc. 1986), and *EEOC v. Mississippi College*, 626 F.2d 477 (5th Cir. 1980). These cases, when considered either individually or collectively, are not "substantial" conflicting decisions. The Court concluded that "*Curay-Cramer* sheds little light on the issue of whether Section 702 bars plaintiff's Title VII claim[.]" Dkt. 93 at 15. The Court correctly recognized that *Curay-Cramer* was resolved on "First Amendment grounds," rather than statutory interpretation grounds. *Id.* at 14.

The Seventh Circuit vacated the District Court's decision in *Maguire*. *Maguire v. Marquette University*, 814 F.2d 1213, 1218 (7th Cir. 1987). The Seventh Circuit declined to decide "whether the exemption covers the type of hiring decision involved here," and instead resolved the case "on a much narrower ground." *Id.* at 1216. The Court was correct to assign little to no weight to the District Court's order in *Maguire* in its decision here. Dkt. 93 at 20-21.

The Archdiocese criticizes the Court for not citing *Mississippi College* in its order. Dkt. 95-1 at 14. But *Mississippi College* is also distinguishable, because the school in that case had an established policy of hiring Baptists, it hired the Baptist for the open position, and the charging party was not a Baptist. 626 F.2d at 484-485. Unlike in *Mississippi College*, the Archdiocese's decision had nothing to do with whether or not Starkey was or is Catholic. Dkt. 1, 20. Moreover,

*Mississippi College*'s holding has been called into question even within its own Circuit. *See Smith v. Angel Food Ministries, Inc.*, 611 F. Supp. 2d 1346, 1347-1351 (M.D. Ga. 2009) (stating that *Miss. College*'s "drive-by jurisdictional ruling" had "no precedential effect" and denied motion to dismiss on plaintiff's religious discrimination claim).

The Court's opinion is consistent with the text, legislative history, and "the overwhelming weight of precedent" interpreting Title VII's religious exemption. *See* Dkt. 93 at 7-10. The issue that the Archdiocese seeks to appeal is not contestable, as it has not demonstrated substantial ground for difference in opinion.

### B.  Church Autonomy.

The Archdiocese has no substantial conflicting authorities in support of its second proposed certified question concerning the scope of the church autonomy doctrine. The Archdiocese cites to four cases, but none of them meet the contestability standard for interlocutory review. Dkt. 95-1 at 17-20 (*citing Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 660 (10th Cir. 2002); *Garrick v. Moody Bible Inst.*, 412 F. Supp. 3d 859, 872 (N.D. Ill. 2019); *Aparicio v. Christian Union, Inc.*, No. 18-cv-0592, 2019 U.S. Dist. LEXIS 55938 (S.D. N.Y. March 29, 2019); *and Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 289 (Ind. 2003)).

As Starkey explained previously, *Bryce* was decided more than ten years before *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171 (2012), where the Supreme Court officially recognized the ministerial exception and clarified its scope. Dkt. 67 at 21.  The Court's expansion of the ministerial exception to Catholic elementary school teachers in *Our Lady of Guadalupe Sch. v. Morrissey-Berru* leaves little room, if any, for continued viability of the church autonomy doctrine in the employment context. 140 S. Ct. 2049, 2060 (2020)

("What matters, at bottom, is what an employee does"); *see also Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2397 n.1 (2020) (Kagan, J., joined by Breyer, J., concurring in judgment) ("there is no general constitutional immunity, over and above the ministerial exception, that can protect a religious institution from the law's operation."). Otherwise, the ministerial exception would be rendered "superfluous." Dkt. 93 at 18.

In *Garrick*, the District Court dismissed the plaintiff's complaint without prejudice, and granted leave for the plaintiff to amend and re-plead her Title VII claims. 412 F. Supp. 3d at 873. In a subsequent order and opinion, the District Court denied in part the Motion to Dismiss the Plaintiff's Amended Complaint. *Garrick v. Moody Bible Inst.*, No. 18-C-573, 2020 U.S. Dist. LEXIS 188707 (N.D. Ill. Oct. 13, 2020) ("*Garrick II*"). The *Garrick II* decision demonstrates that religious justifications for employment decisions may be attacked based on pretext, just as Starkey has argued the Court should do here. *See* Dkt. 91 at 2-3.

*Aparicio* never uses the phrases "church autonomy" or "religious autonomy." 2019 U.S. Dist. LEXIS 55938 at **1-29. However, the Court concluded that, while the plaintiff was not a minister himself, he could not oppose the employer's "complementarian" policy, which prevented women from serving as directors in the CUI's ministry, without running afoul of the First Amendment. *Id*. at **23-24. Essentially, *Aparicio* prohibited a non-ministerial employee from bringing a Title VII retaliation claim based on a complaint of discrimination against a ministerial employee. *Id*. at *25. This is of no help to the Archdiocese here, where Starkey is both the person who engaged in protected activity and the victim of discrimination.

The Archdiocese cites to *Brazauskas* with respect to Starkey's state law claims, but this Court has already distinguished *Brazauskas*, which involved a plaintiff who filled a religious role. Dkt. 93 at 19.

The Archdiocese's church autonomy defense (or at least its application of this defense to Starkey) also conflicts with the Seventh Circuit's recent decision in *Demkovich*, which recognized that Title VII hostile environment claims (even where the plaintiff was a minister) could proceed without violating church autonomy principles. 973 F.3d at 733-734. If the Archdiocese does succeed in bringing an interlocutory appeal, it will have to grapple with the fact that it would essentially be asking the Seventh Circuit to over-rule its own decision from two months ago. Although the Archdiocese notes that *Demkovich* "may soon be reheard *en banc*," the Seventh Circuit has not granted rehearing *en banc*, and may likely decide not to do so.

### C.  Freedom of Association.

Finally, the Archdiocese's proposed certified question on the freedom of association defense is not contestable because it runs directly into adverse U.S. Supreme Court precedent. *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984). In *Hishon*, the Court quickly dispensed with a law firm's freedom of association defense to a Title VII claim brought by a female associate who was not invited to be a partner. *Id*. at 71, 78. The Court said, "as we have held in another context, '[invidious] private discrimination may be characterized as a form of exercise of freedom of association protected by the First Amendment, but it has never been accorded affirmative constitutional protections.'" *Id*. at 78 (*citing Norwood v. Harrison*, 413 U.S. 455, 470 (1973)). This Court cited *Hishon* with approval in its Order on the Motion for Judgment on the Pleadings. Dkt. 93 at 23.

The Archdiocese claims that *Hishon* was not dispositive, claiming that *Hishon* "analyzed the expressive-association defense on the merits[.]" Dkt. 95-1 at 23. This is an inaccurate reading of *Hishon*, which only briefly considered (and devoted one paragraph to) the law firm's First Amendment defense. It did not engage in any thorough analysis of the elements, or describe or

cite to the balancing test from *Roberts*. *Hishon*, 467 U.S. at 78. Although the Archdiocese cites to decisions from other courts where a freedom of association defense was applied in the employment context, it has not identified any case where such a defense was successfully applied to defeat Title VII claims. *See* Dkt. 95-1 at 21-23.

None of the Archdiocese's proposed certified questions are contestable, and the Court should deny the motion to certify with respect to each of the questions.

## CONCLUSION

For the above reasons, the Court should deny the Archdiocese's Motion for Certification for Interlocutory Appeal in its entirety.

Respectfully submitted,

*/s/ Kathleen A. DeLaney*
Kathleen A. DeLaney (#18604-49)
Christopher S. Stake (#27356-53)
DeLaney & DeLaney LLC
3646 Washington Blvd.
Indianapolis, IN 46205

*Attorneys for Plaintiff Lynn Starkey*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of November, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

> John S. (Jay) Mercer
> jmercer@fitzwatermercer.com
>
> Paul J. Carroll
> pcarroll@indylegal.com
>
> Daniel H. Blomberg
> dblomberg@becketlaw.org
>
> Christopher C. Pagliarella
> cpagliarella@becketlaw.org
>
> Luke W. Goodrich
> lgoodrich@becketlaw.org
>
> Joseph Charles Tucker Davis
> jdavis@becketlaw.org
>
> */s/ Kathleen A. DeLaney*
> Kathleen A. DeLaney

DELANEY & DELANEY LLC
3646 N. Washington Blvd.
Indianapolis, IN  46205