# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| LYNN STARKEY, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:19-cv-03153-RLY-TAB |
| | ) |
| ROMAN CATHOLIC ARCHDIOCESE | ) |
| OF INDIANAPOLIS, INC. and | ) |
| RONCALLI HIGH SCHOOL, INC., | ) |
| | ) |
|    Defendants. | ) |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION
## FOR CERTIFICATION FOR INTERLOCUTORY APPEAL
## UNDER 28 U.S.C. § 1292(b)

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I. The Court should certify the Title VII and First Amendment
   questions for interlocutory appeal............................................................................... 2

    A.  The Title VII question is a controlling, contestable
        question of law........................................................................................................ 2

    B.  The church autonomy question is a controlling, contestable
        question of law. ...................................................................................................... 5

    C.  The freedom of association question is a controlling, contestable
        question of law. ...................................................................................................... 8

    D.  Resolution of each question would materially advance the
        ultimate termination of the litigation. ............................................................. 10

CONCLUSION................................................................................................................... 13

## INTRODUCTION

The Archdiocese has requested certification of three controlling, contestable legal questions on (1) the scope of Title VII's religious exemption, (2) the applicability of church autonomy doctrine, and (3) the scope of the First Amendment freedom of expressive association. This Court has already recognized that these are "difficult questions." Dkt. 93 (Ord.) at 1. And if resolved differently on appeal, they would "materially advance the ultimate termination of the litigation" (28 U.S.C. § 1292(b))—not only by simplifying any further proceedings but also by likely obviating the need for any further proceedings at all.

Starkey does not dispute that these are timely raised legal questions, that they could affect further proceedings in the case, or that at least some courts have adopted a different position on them than this Court. Instead, she claims that conflicting authority is not "substantial" if it has been criticized, is insufficiently recent, or reads Supreme Court precedent differently than this Court. But that is not the standard under § 1292(b).

Alternatively, Starkey claims that "materially advanc[ing] the ultimate termination" of litigation can mean only one thing—getting to trial and final judgment faster. But numerous cases applying § 1292(b) have rejected that view, holding instead that the relevant consideration is whether an interlocutory appeal might eliminate some claims, simplify further proceedings, or obviate the need for a trial—which is what reversal would do here. Indeed, if the primary consideration under § 1292(b) were whether an interlocutory appeal might push back a trial date, virtually no interlocutory appeal would ever be granted. Yet federal courts have regularly certified § 1292(b) appeals in cases like this one—including on the scope of Title VII's religious exemption and the scope of church autonomy—and the Seventh Circuit has indicated that the very Title VII question presented here is appropriate for certification. Accordingly, certification should be granted.

1

# ARGUMENT

## I. The Court should certify the Title VII and First Amendment questions for interlocutory appeal.

Each question presented here satisfies the requirements of 28 U.S.C. § 1292(b). (Dkt. 95-1). Each (1) is a question of law, (2) is controlling, (3) is contestable, (4) may advance termination of the litigation, and (5) is timely raised. Starkey does not dispute the first or fifth factors, and her arguments on the other factors are meritless.

### A. The Title VII question is a controlling, contestable question of law.

The scope of Title VII's religious exemption is controlling because, if resolved in the Archdiocese's favor, it would dispose of all of Starkey's federal claims. Dkt. 102 at 11. And it is contestable because other courts have adopted conflicting positions on it. *See, e.g.*, *Curay-Cramer v. Ursuline Acad.*, 450 F.3d 130 (3d Cir. 2006); *Curay-Cramer*, 344 F. Supp. 2d 923, 935 (D. Del. 2004) (district court disposition); *Maguire v. Marquette Univ.*, 627 F. Supp. 1499 (E.D. Wis. 1986), *aff'd in part and vacated in part*, 814 F.2d 1213 (7th Cir. 1987); *EEOC v. Miss. Coll.* 626 F.2d 477 (5th Cir. 1980). Indeed, multiple Supreme Court Justices (and scholars) have noted that this question is "disputed" among "lower courts." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1781 (2020) (Alito, J., dissenting); Dkt. 95-1 at 10-11 (collecting scholarship). And the Seventh Circuit has strongly suggested that the scope of Title VII's religious exemption is appropriate for interlocutory review. *Herx v. Diocese of Fort Wayne-S. Bend, Inc.*, 772 F.3d 1085, 1088 (7th Cir. 2014).

In response, Starkey says the Seventh Circuit's decision in *Herx* provides "no guidance at all" about the appropriateness of certification. Dkt. 102 at 16. But *Herx* approvingly cited the Fourth Circuit's certification of a similar question on the scope of Title VII's religious exemption, 772 F.3d at 1088 (citing *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 191 (4th Cir. 2011)), and the Seventh Circuit has elsewhere called this Title VII question "difficult and complex." *Maguire v. Marquette Univ.*, 814

F.2d 1213, 1216 (7th Cir. 1987). Indeed, the Seventh Circuit in *Herx* would have no reason to say that the diocese could "ask the court to certify" the Title VII question if asking would be futile. 772 F.3d at 1088.

Alternatively, Starkey claims the scope of Title VII's religious exemption is not "controlling" because it "would not resolve [her] state law claims." Dkt. 102 at 11. But that misstates the standard. A question need not dispose of the entire case to be controlling; instead, it need only be "quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). Here, the religious exemption, if applicable, would bar all of Starkey's Title VII claims—meaning it is controlling for purposes of § 1292(b). Dkt. 59 at 9-10 (collecting cases). In any event, Starkey does not dispute that the normal course, after dismissal of the Title VII claims, would be to dismiss the state law claims too—meaning reversal on the Title VII exemption likely *would* resolve this lawsuit in its entirety, state-law claims included.

Starkey also says the scope of Title VII's religious exemption is not "controlling" because her same-sex union was not (in her view) a "religious observance"—and therefore the religious exemption would "not apply." Dkt. 102 at 11. But this is simply a merits argument about whether or not the religious exemption applies in this case. It says nothing about whether, *assuming the exemption applies*, it is "controlling" for purposes of § 1292(b). It is also a faulty merits argument. There is no authority—and Starkey cites none—suggesting that the applicability of the religious exemption turns on whether an employee views her conduct as "religious." Instead, the exemption turns on whether the *employer* is making a selection based on "the employers' religious precepts." *See, e.g., Little v. Wuerl*, 929 F.2d 944, 946, 951 (3d Cir. 1991) (nonrenewal due to second marriage "by a Justice of the Peace"). And the Seventh Circuit has warned that it is "inappropriate" for courts to "challeng[e] a religious institution's

3

honest assertion that a particular practice is a tenet of its faith." *Grussgott v. Milwaukee Jewish Day Sch., Inc.*, 882 F.3d 655, 660 (7th Cir. 2018).

As for contestability, Starkey gives no response to *Bostock*'s recognition that Title VII's religious exemption is relevant in cases like this one. 140 S. Ct. at 1753-54. She gives no response to multiple Justices' (and multiple scholars') recognition that the applicability of the exemption to religious-conduct decisions is "disputed" among "lower courts." *Id.* at 1781 (Alito, J., dissenting); Dkt. 95-1 at 10-11 (scholars noting that "cases are mixed"). And she gives no response to decisions by the Third, Sixth, and Eleventh Circuits saying that the religious exemption protects employers who impose religiously-motivated conduct rules. Dkt. 95-1 at 13-14 (citing *Little*, *Hall*, and *Killinger*).

Instead, she tries to distinguish several contrary cases, but without success:

- Starkey does not dispute that *Maguire* conflicts with this Court's decision; she simply says this Court was right to assign it "little to no weight" since the Seventh Circuit resolved the case on "narrower ground." Dkt. 102 at 16. But the Seventh Circuit never disapproved of the lower court's reasoning; to the contrary, it complimented the district court's "conscientious[] grappl[ing] with the" "scope of the religious-employer exception," calling that question "difficult and complex." *Maguire*, 814 F.2d at 1216. So the *Maguire* district court's decision still offers an example of another jurist "adopt[ing] conflicting positions," *Patrick v. Pyod, LLC*, No. 1:14-cv-00539-RLY-TAB, 2014 WL 5343284, at *1 (S.D. Ind. Oct. 20, 2014), and the Seventh Circuit's characterization of the question at issue here only *supports* that it is contestable.

- Starkey tries to distinguish *Mississippi College* on the ground that the hiring decision there was based on "an established policy of hiring Baptists." Dkt. 102 at 16. But that is no distinction at all, as the hiring decision here was likewise based on an established policy (written into Starkey's contract) of hiring individuals whose "personal conduct … [is] supportive of the teachings of the Catholic Church." Dkt. 59 at 4. The question is whether acting on a religious requirement (whether belief-based or observance-based) is protected by Title VII's religious exemption, even when the plaintiff claims sex discrimination. On that question, *Mississippi College* conflicts with this Court.

- On *Curay-Cramer*, Starkey simply ignores the district court decision (not previously addressed by this Court), which held that *even if* opposition to abortion advocacy was *per se* sex discrimination, it would still not be cognizable due to

4

its overlap with doctrinal matters. 344 F. Supp. 2d at 935. And Starkey makes no effort to distinguish the Third Circuit's holding that sex discrimination claims are barred by the religious exemption when they would "jeopardize[]" a religious organization's ability to be staffed by those who obey its "doctrinal practices." 450 F.3d at 141. Indeed, the gravamen of Starkey's complaint is that Catholic organizations may *not* maintain organizations "composed *solely* of individuals faithful to their doctrinal practices" on marriage—even where, as here, the school's mission is to inculcate those teachings. *Id.* (emphasis added).

In short, Starkey cannot escape a simple fact: Multiple courts have applied Title VII's religious exemption to bar claims of sex discrimination when the employment decision was based on the employer's religious standards of conduct. Accordingly, certification is appropriate.

### B. The church autonomy question is a controlling, contestable question of law.

The Archdiocese's second question—whether the church autonomy doctrine bars an employment-discrimination suit only when "the employee qualifies as a minister," Ord. 18, or whether it also bars suits "[w]hen a church makes a personnel decision based on religious doctrine," *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 660 (10th Cir. 2002)—likewise satisfies § 1292(b). It is controlling because, if resolved against Starkey, it would require dismissal of the entire case. *See* Dkt. 95-1 at 14-15 (collecting cases). And it is contestable because other courts—including *Bryce*, *Garrick*, *Aparicio*, and *Brazauskas*—have reached a different result.

Starkey claims the question is not controlling because, even if the Seventh Circuit reached a different result, "discovery would be necessary in order to resolve this [church autonomy] defense." Dkt. 102 at 12. Not so. The courts in *Garrick* and *Aparicio* resolved the church autonomy defense on the pleadings, without conducting any discovery. *Garrick v. Moody Bible Inst.*, 412 F. Supp. 3d 859, 862 (N.D. Ill. 2019) (*Garrick I*); *Aparicio v. Christian Union, Inc.*, No. 18-cv-0592 (ALC), 2019 WL 1437618, at *1 (S.D.N.Y. Mar. 29, 2019). And *Bryce* resolved it on a motion to dismiss, which it converted to summary judgment only because the defendant attached

5

exhibits. 289 F.3d at 654-55. Here, even exhibits are unnecessary: On the face of her complaint, Starkey alleges that she was nonrenewed because of the Archdiocese's religious objections to her same-sex union. Dkt. 1 ¶¶ 42, 45. She has not alleged any reason for nonrenewal *unrelated* to the Archdiocese's religious beliefs. Thus, if the Seventh Circuit agrees with *Garrick*, *Aparicio*, *Brazauskas*, and *Bryce*—that church autonomy bars civil court interference with "personnel decision based on religious doctrine," 289 F.3d at 660—then Starkey's claims must be dismissed.

Starkey also fails to distinguish the cases showing that the question is contestable. On *Bryce*, her only argument is that it was decided ten years before *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171 (2012). Dkt. 102 at 17. That is irrelevant. *Hosanna-Tabor* merely confirmed a "ministerial exception" that had been recognized for decades, as expressly acknowledged in *Bryce. See Bryce*, 289 F.3d at 656, 658 n.2. And *Hosanna-Tabor* itself approvingly cites *Bryce*'s discussion of the ministerial exception, which distinguishes the exception from other autonomy principles. 565 U.S. at 188 n.2; *see Korte v. Sebelius*, 735 F.3d 654, 677-78 (7th Cir. 2013) (explaining applications of church autonomy beyond ministerial exception, and noting "[t]he religious-employer exemptions in Title VII" as a "legislative application[] of the church-autonomy doctrine").

Alternatively, Starkey says there is "little room, if any," to apply church-autonomy doctrine in the employment context given the modern ministerial exception's broad scope. Dkt. 102 at 17. But *Bryce* and other courts disagree. They treat the ministerial exception as a specific, narrow application of "the broader church autonomy doctrine." 289 F.3d at 658 n.2. That is, church autonomy broadly protects religious organizations when they make employment decisions for *religious reasons*, regardless of whether the employee was a minister; the ministerial exception applies more narrowly to *ministers*, but applies regardless of whether the employment decision was based on a religious reason. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140

S. Ct. 2049, 2060-61 (2020) (ministerial exception is one "insight" within "the general principle of church autonomy"). This Court need not agree with this view to recognize it is a differing view held by other jurists.

Starkey likewise fails to distinguish the rulings in *Garrick v. Moody Bible Institute*, which barred a sex discrimination claim by a non-ministers when the employment decision was "rooted firmly in … religious beliefs." 412 F. Supp. 3d at 872; *see Garrick II*, No. 18 C 573, 2020 WL 6044292, at *6 (N.D. Ill. Oct. 13, 2020). Although she says she can avoid *Garrick* if she argues that the Archdiocese's religious objection to her same-sex union was a "pretext," she has not pled any non-religious rationale for the Archdiocese's decision. Dkt. 102 at 18 (citing her proposals to seek evidence regarding how other church teachings were treated). And in any event, this Court has already ruled that such evidence is "not necessary" here. Dkt. 93 at 20.

Nor can Starkey distinguish *Aparicio*, which barred a Title VII claim of "gender discrimination" challenging a religious practice. 2019 WL 1437618, at *1. She says *Aparicio* bars a "non-ministerial employee" from complaining about "discrimination against a ministerial employee." Dkt. 102 at 18. But *Aparicio* specifically held the defendant was "*not entitled* to the ministerial exception"; thus, it is yet another example of church autonomy reaching more broadly than the ministerial exception. 2019 WL 1437618, at *7 (emphasis added).

On *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, Starkey says this Court "already distinguished" it on the ground that the plaintiff "filled a religious role." Dkt. 102 at 18. But she simply ignores the fact that this Court's analysis tracks the *Brazauskas dissent*—saying that church autonomy applies only "in cases involving members of the clergy," not to claims "by non-ministerial employees"—and that this view was rejected by the *Brazauskas* majority. *Compare Brazauskas*, 796 N.E.2d 286, 295-96 (Ind. 2003) (Sullivan, J., dissenting) *with id.* at 293-94.

Lastly, Starkey reaches for *Demkovich v. St. Andrew the Apostle Parish*, 973 F.3d 718, 730 (7th Cir. 2020), arguing that at least her "hostile environment claims" can proceed "without violating church autonomy." Dkt. 102 at 19. But *Demkovich* permits hostile environment claims only when those claims "do not challenge tangible employment actions," such as "hiring, firing, promoting, deciding compensation, job assignments, and the like." 973 F.3d at 720. Here, Starkey has not alleged any facts in support of a hostile environment claim independent of a tangible employment action. *See* Dkt. 1 ¶¶ 12-47 ("Factual Allegations"). Thus, *Demkovich* can't help her.

In short, the church-autonomy issue is a controlling, contestable question of law that, if resolved in the Archdiocese's favor, would bar Starkey's claims and eliminate the need for intrusive discovery and trial. The issue should be certified.

### C. The freedom of association question is a controlling, contestable question of law.

The Archdiocese's third question—whether the First Amendment right of expressive association extends to employment claims—is controlling because it would substantially alter the case and bar Starkey's claims. And it is contestable because multiple courts have recognized that *Boy Scouts of America v. Dale* extends to employment claims. 530 U.S. 640, 648 (2000).

Starkey argues extending *Dale* to employment would not be controlling because there is a "balancing" that must be conducted under strict scrutiny. Dkt. 102 at 13. But this argument fails for two reasons. First, even assuming balancing is required, it would "affect the further course of the litigation"—including both discovery and the merits—to require Starkey to satisfy strict scrutiny. *Sokaogon Gaming*, 86 F.3d at 659. Second, and more importantly, Starkey cannot satisfy strict scrutiny as a matter of law. She has not even proposed a plausible strict scrutiny argument that she intends to argue that would be consistent with *Dale*. And that is because *Dale* already resolves the strict scrutiny issue against her—holding that the government can't

8

satisfy strict scrutiny when it tries to force an expressive organization to include an individual who undermines its message on human sexuality. 530 U.S. at 648. Indeed, if the claim in *Dale* failed strict scrutiny—when the Boy Scouts admittedly had no clear message on homosexuality and did not seek to inculcate those views in the organization, *id.* at 650, 654—this is an *a fortiori* case, where the Catholic Church has had a clear teaching on human sexuality for millennia, and a core purpose of a Catholic school is to inculcate that teaching.

On whether the issue is contestable, Starkey does not even attempt to distinguish the multiple cases applying *Dale* in the employment context; indeed, she doesn't even cite them. *See, e.g.*, *Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 805 (E.D. Mo. 2018) (applying *Dale* to bar application of employment laws to Catholic schools); *Boy Scouts of America v. Wyman*, 335 F.3d 80, 91 (2d Cir. 2003) (Boy Scouts may "under any reading of *Dale*" exclude "gay activists" from employment as leaders); *Chi. Area Council of Boy Scouts of Am. v. City of Chi. Comm'n on Hum. Rels.*, 748 N.E.2d 759, 769 (Ill. App. Ct. 2001) (similar); *see also Priests for Life v. HHS*, 7 F. Supp. 3d 88, 109 (D.D.C. 2013) (suggesting that freedom of association protects against "forcing [groups ] to … hire employees").

Instead, she stakes everything on her reading of *Hishon v. King & Spalding*, 467 U.S. 69 (1984). But this fails for several reasons. First, she cites *no authority* adopting her sweeping view of *Hishon*. Second, her reading of *Hishon* would mean that every case applying *Dale* in the employment context after *Hishon* was wrongly decided—which is both implausible and simply underscores that her unsupported reading of *Hishon* is contestable. Third, her reading of *Hishon* is inconsistent with *Hishon* itself—as it would render *Hishon*'s discussion of the merits of the expressive association defense, including the failure to demonstrate an "inhibit[ion]" of expression, mere surplusage. 467 U.S. at 78. Finally, her reading of *Hishon* is inconsistent with *Hosanna-Tabor*—in which both the plaintiff and the EEOC (which is charged with

9

enforcing Title VII) agreed that "religious organizations could successfully defend against *employment discrimination claims*" by "invoking the constitutional right to freedom of association." 565 U.S. at 189 (emphasis added). The Supreme Court did not disagree that this "is a right enjoyed by religious and secular groups alike"; yet it went even further in recognizing "special solicitude" and even broader protection for "a religious organization's freedom to select its own ministers." *Id.* In short, Starkey's idiosyncratic view of expressive association is at least sufficiently contestable for certification.

### D. Resolution of each question would materially advance the ultimate termination of the litigation.

As Starkey does not contest timeliness, the only remaining question is whether "immediate appeal *may* materially advance the ultimate termination of the litigation." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (emphasis in original). As the Archdiocese has explained, the Seventh Circuit has held that certification is "almost certain" to advance ultimate termination where reversal will take the "main" claim "out of the case." *Id.* Certification also advances ultimate termination when "costly discovery and other litigation expenses" "could be spared," *Pyod*, 2014 WL 5343284, at *2, or when appeal could provide "guidance" for trial or eliminate trial entirely. *Gamboa v. City of Chi.*, No. 03 C 219, 2004 WL 2877339, at *4 (N.D. Ill. Dec. 13, 2004); *see also* Dkt. 95-1 at 22 (collecting cases).

Unable to dispute that reversal on the certified questions would remove her central claims, eliminate costly discovery, and likely resolve the case entirely, Starkey tries to distort the legal standard—arguing that the "ultimate termination" standard boils down to only one consideration: whether the "timetable for terminating the litigation" is "shorter" with an immediate appeal. Dkt. 102 at 8. Of course, interlocutory appeal *will* shorten the timetable of this litigation if certification is granted and the

10

Seventh Circuit holds that Starkey's claims are barred. Thus, even under Starkey's cramped view of § 1292(b), certification is appropriate.

But § 1292(b) doesn't ask whether interlocutory appeal will *shorten* the *timetable* of litigation; it asks whether it "may *materially advance* the *ultimate termination* of the litigation." 28 U.S.C. § 1292(b) (emphasis added). This is a question not merely of the *number of days* before a case is terminated but also *how* it is terminated—including the "total burdens of litigation on parties and the judicial system." 16 Wright & Miller, *Federal Practice and Procedure* § 3930 (3d ed.). Thus, numerous courts have recognized that, whether or not it *hastens* the litigation, interlocutory appeal is appropriate when it would *simplify* litigation by eliminating some claims, reducing costly discovery and other litigation expenses, or obviating the need for a trial. *See, e.g.*, *Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1003 (N.D. Ill. 2014) (recognizing that certification was appropriate because the appeal "could end this case before the parties proceed to discovery and beyond"); *Pyod*, 2014 WL 5343284, at *2 (observing that "costly discovery and other litigation expenses" "could be spared with an immediate appeal"); Dkt. 95-1 at 22 (collecting cases). An interlocutory reversal from the Seventh Circuit would obviously do that here.

And immediate appeal is all the more appropriate here due to the weighty First Amendment issues on the other side of the ledger. Although religious organizations of course have no "general immunity from secular laws,'" Dkt. 102 at 9, as we have explained, where church autonomy or the ministerial exception applies, those doctrines function not just as a defense to liability but as an immunity from the burdens of discovery and trial. *See* Dkt. 42 at 14-21 (collecting cases confirming the immunity and granting interlocutory appeal or bifurcation to protect it). Thus, denying immediate appeal risks not just the ordinary litigation costs of unnecessary discovery and trial, but irreparable destruction of a fundamental First Amendment immunity. That

11

is why so many cases have granted interlocutory appeal to consider questions of church autonomy or the ministerial exception. Dkt. 95-1 at 24-25 (collecting cases).[1]

Against all this, Starkey's lone counterargument is that certification should be denied because it would disrupt the current case management schedule. Not only is that not the standard—and she offers no case law to say it is—but she tellingly cannot show that the case management schedule as it stands will not *already* be delayed. Specifically, with three months to trial, Starkey has not yet provided any discovery to the Archdiocese beyond the ministerial exception—after availing herself of the stay on such discovery. Yet she has submitted a case management proposal suggesting dispositive motions be filed in just eight days (November 24), *before* a later close of discovery. Dkt. 103 at 6. As the Archdiocese explained in reply, Dkt. 104, that would deprive the Archdiocese of its right to file a summary judgment motion based on all evidence, and certainly deprive the Court of a full opportunity to consider such motions before trial. And such a proposal is particularly inappropriate where the Court itself has suggested that at least one of the Archdiocese's defenses apart from the ministerial exception "may be" viable, but would be "more appropriately addressed after discovery" has closed. Dkt. 93 at 20 (entanglement).

In short, certification will conserve judicial resources by giving the Seventh Circuit the opportunity to weigh in on the very significant statutory and First Amendment issues at the core of this case. Reversal on those issues would eliminate the need for discovery and trial, vastly simplifying (and likely ending) this case. And if the Seventh Circuit disagrees that interlocutory appeal is appropriate, it can simply decline to accept the appeal.

---

[1] The Archdiocese also intends to file a notice of appeal by November 20, 2020, to preserve its right to collateral order review of its First Amendment immunity. However, certification will promote judicial efficiency by obviating the need for briefing and decision on the collateral order doctrine and by giving the Seventh Circuit discretion over which certified questions to review.

## CONCLUSION

Each of the questions proposed by the Archdiocese is a controlling and contestable question of law where early appellate resolution will advance the ultimate termination of this litigation. The Court should certify those questions and allow the Seventh Circuit to decide whether to accept the appeal.

Respectfully submitted,

By: /s/ Luke W. Goodrich
Luke W. Goodrich (DC # 977736)
Daniel H. Blomberg (DC # 1032624)
Joseph C. Davis (DC #1047629)
Christopher C. Pagliarella (DC # 273493)
The Becket Fund for Religious Liberty
1200 New Hampshire Ave NW
Suite 700
Washington, DC 20036
(202) 955-0095
(202) 955-0090 fax

John S. (Jay) Mercer, #11260-49
FITZWATER MERCER
One Indiana Square, Suite 1500
Indianapolis, IN 46204
(317) 636-3551
(317) 636-6680 fax

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing has been served upon the following on November 16, 2020, by this Court's electronic filing system:

Kathleen A. DeLaney
Christopher S. Stake
DeLaney & DeLaney LLC
3646 N. Washington Boulevard
Indianapolis, IN 46205
KDelaney@delaneylaw.net
CStake@delaneylaw.net

By: /s/ Luke W. Goodrich
Luke W. Goodrich (DC # 977736)
The Becket Fund for Religious Liberty
1200 New Hampshire Ave NW
Suite 700
Washington, DC 20036
(202) 955-0095
(202) 955-0090 fax