# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| LYNN STARKEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-03153-RLY-TAB |
| | ) |
| ROMAN CATHOLIC ARCHDIOCESE | ) |
| OF INDIANAPOLIS, INC. and | ) |
| RONCALLI HIGH SCHOOL, INC., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

In support of their motion for summary judgment or judgment on the pleadings (Dkt. 114), Defendants submit as supplemental authority the Seventh Circuit's *en banc* decision in *Demkovich v. St. Andrew the Apostle Parish*, — F.4th —, No. 19-2142, 2021 WL 2880232 (7th Cir. July 9, 2021).

*Demkovich* is directly relevant in this case, as it reverses a prior panel decision that Plaintiff Starkey has relied on extensively—including in her opposition to judgment on the pleadings (Dkt. 87 at 3-4), her opposition to bifurcation (Dkt. 87 at 3), her opposition to certification (Dkt. 102 at 9, 12, 19), and her opposition to summary judgment (Dkt. 126 at 3, 26-28). The *en banc* ruling in *Demkovich* confirms that hostile work environment claims like Starkey's are barred by the ministerial exception. And it confirms that Starkey's suit is independently barred by the First Amendment doctrines protecting church autonomy and prohibiting entanglement in religious questions.

The plaintiff in *Demkovich* was a parish music director who brought hostile work environment claims under the ADA and Title VII based on his supervising priest's "derogatory comments and demeaning epithets" relating to his weight and sexual

1

orientation. 2021 WL 2880232, at *1. Although the plaintiff was a minister, the district court allowed the case to proceed, reasoning that "the ministerial exception did not categorically bar Demkovich's hostile work environment claims." *Id.* at *2. The district court certified the issue for interlocutory appeal, and after a divided panel agreed with the district court, the Seventh Circuit took the case *en banc*. *Id.*

By a 7-3 vote, the Court held that "the ministerial exception precludes Demkovich's hostile work environment claims against the church." *Id.* at *10. It explained that the "protected interest of a religious organization in its ministers covers *the entire employment relationship*"—not just "the beginning (hiring) and the end (firing)" of that relationship. *Id.* at *4, *6 (emphasis added). For that reason, adjudicating ministers' hostile work environment claims would violate both "the Free Exercise Clause and the Establishment Clause." *Id.* at *6. First, "[b]y probing the ministerial work environment, the state—acting through a court—interferes with the Free Exercise Clause, 'which protects a religious group's right to shape its own faith and mission.'" *Id.* (quoting *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188 (2012)). Second, "[a]llowing the state to regulate the ministerial work environment similarly runs afoul of the Establishment Clause, 'which prohibits government involvement in such ecclesiastical decisions.'" *Id.* (quoting *Hosanna-Tabor*, 565 U.S. at 189). Thus, "[e]ven at its least invasive, a hostile work environment claim threatens to fundamentally alter the ministerial relationship and work environment." *Id.* at *7.

*Demkovich* supports the Archdiocese on four key issues in this case. **First**, it makes clear that Starkey's hostile work environment claim is subject to the ministerial exception. As *Demkovich* said: "It would be incongruous if the independence of religious organizations mattered only at the beginning (hiring) and the end (firing) of the ministerial relationship, and not in between (work environment)." *Id.* at *6. The same is true here, only more so, where Starkey's hostile work environment

2

claim alleges nothing like the slurs or epithets at issue in *Demkovich*, but only that the Archdiocese declined to retain school leaders who violated their contracts and Church teaching. Dkt. 132 at 16. Thus, her claim is even more obviously barred than the claim in *Demkovich*.

The same is true of Starkey's state-law claims for intentional interference in an employment relationship. Dkt. 132 at 16-18. The interference claims relate solely to actions the Archdiocese took to supervise who could serve as a minister—specifically, designating the terms of her ministerial contract, and declining to renew that contract after she violated it. Dkt. 1 at ¶¶ 82-83, 89-90. By seeking to have a court declare those actions "not justified," Dkt. 1 at ¶¶ 84, 91, Starkey would have a court interfere with "[a] religious organization's supervision of its ministers," which is "as much a 'component' of its autonomy as 'is the selection of the individuals who play certain key roles.'" *Demkovich*, 2021 WL 2880232, at *6. Thus, under *Demkovich*, all of Starkey's claims are subject to the ministerial exception.

**Second**, *Demkovich* supports the Archdiocese's separate legal defense under the church autonomy doctrine, which protects its right to select even *non*-ministers "based on religious doctrine." *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 656-60, 658 n.2 (10th Cir. 2002); Dkt. 59 at 20-24. Starkey tries to conflate the church autonomy doctrine with the ministerial exception, and argues that church autonomy doesn't apply if claims can be resolved using "neutral principles of law." Dkt. 67 at 21-22, 24-27. But *Demkovich* rejects both points. The Court explained that while "[t]he ministerial exception follows naturally from the church autonomy doctrine," it is just one part of the Supreme Court's broader "church autonomy jurisprudence," which guarantees churches' "'independence in matters of faith and doctrine and in closely linked matters of internal government.'" 2021 WL 2880232, at *3. And the Court rejected the dissent's argument that intrusions on church autonomy can be avoided simply by applying "'neutral, secular principles of

3

law.'" *Id.* at *6. Rather, what matters is whether the plaintiff's claims "interfere with a religious organization's internal governance." *Id.* at *7. That occurs, of course, when a church dismisses a minister—with or without "a religious justification." *Id.* at *6. But it also occurs when a church dismisses a non-minister due to "a dispute over religious doctrine"—a dispute Starkey admits is present here. *Id.* at *5.

**Third**, *Demkovich* supports dismissal of this case due to "excessive entanglement with . . . the religious sphere." *Id.* at *4. Starkey doesn't dispute that she was dismissed after violating her contract and Church teaching; instead, she hopes to find evidence that "other employees" were not dismissed after violating other "Church teachings"—which would invite this Court to decide whether or not the Archdiocese was "truthfully motivated to enforce Church teachings." Dkt. 67 at 25. But *Demkovich* (along with many other cases) rejected this kind of inquiry, stating that "[d]iscerning doctrine from discrimination is no task for a judge or jury." 2021 WL 2880232, at *7. Rather, "the state may no more require a minimum basis in doctrinal reasoning than it may supervise doctrinal content." *Id.* at *8. And Starkey's claim is even more entangling than the claim in *Demkovich*, because she is expressly asking the Court to weigh the competing gravity of different sins. Dkt. 69 at 14-16.

**Finally,** *Demkovich* underscores why the plenary discovery sought by Starkey in this case—much less an intrusive trial—is forbidden by the First Amendment. *Demkovich* notes that "discovery to determine who is a minister"—the only discovery taken here thus far—"differs materially from discovery to determine how that minister was treated." 2021 WL 2880232, at *9. The latter discovery "brings the entire ministerial relationship under invasive examination" barred by the Religion Clauses—including through "the depositions of fellow ministers and the search for a subjective motive behind the alleged" discrimination. *Id.* Even "the beginnings of discovery" can have "prejudicial effects" on a religious organization's First Amend-

4

ment rights. *Id.* at *8. Thus, it is no surprise that the Seventh Circuit allowed an interlocutory appeal in *Demkovich*, and even reheard the case *en banc*, at the motion to dismiss stage. And it is no surprise that the Court ordered dismissal of the case in its entirety, prior to plenary discovery. The same result is required here.

                                                                            Respectfully submitted,

| | |
|---|---|
| John S. (Jay) Mercer, #11260-49 | /s/ Luke W. Goodrich |
| Wooton Hoy, LLC | Luke W. Goodrich (DC # 977736) |
| 13 North State Street, #2A | Daniel H. Blomberg (DC # 1032624) |
| Greenfield, IN 46140 | Christopher C. Pagliarella (DC # 273493) |
| (317) 439-0541 | The Becket Fund for Religious Liberty |
| | 1919 Pennsylvania Ave NW, Ste. 400 |
| | Washington, DC 20006 |
| | (202) 955-0095 |
| | (202) 955-0090 fax |

                              *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served upon the following on July 14, 2021, by this Court's electronic filing system:

Kathleen A. DeLaney
Christopher S. Stake
DeLaney & DeLaney LLC
3646 N. Washington Boulevard
Indianapolis, IN 46205

<u>By: /s/ Luke W. Goodrich</u>
Luke W. Goodrich
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave NW
Suite 400
Washington, DC 20006
(202) 955-0095
(202) 955-0090 fax